# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**DINA FAVREAU,**

       **Plaintiff,**

**v.**

**LIBERTY MUTUAL GROUP INC.**

       **Defendant.**

**Civil Action No. 1:19-CV-10458**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LIBERTY MUTUAL GROUP INC.'S MOTION TO DISMISS

Defendant Liberty Mutual Group Inc. ("Liberty Mutual") hereby submits this Memorandum of Law in Support of its Motion to Dismiss. Defendant moves the Court to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Plaintiff, a former Liberty Mutual employee, has brought claims against Liberty Mutual alleging interference and retaliation for exercising and/or attempting to exercise her rights under the Family Medical Leave Act ("FMLA") (Count I); violations of the Massachusetts Wage Act and breach of contract (Count II); and negligent hiring, supervision and retention of employees (Count III).

Plaintiff's claims under the FMLA fail as a matter of law because Plaintiff has not sufficiently pled facts to establish that Liberty Mutual unlawfully interfered with Plaintiff's exercise of her rights under the FMLA or retaliated against her.  This is particularly the case where Plaintiff was provided with a leave of absence for almost two years, *i.e.,* well beyond the twelve-week entitlement required by the FMLA. As to Count II, Plaintiff's claims under the

Massachusetts Wage Act and breach of contract are preempted by the Employee Retirement Income Security Act ("ERISA") and therefore fail to establish a claim for relief. Moreover, Plaintiff is claiming retaliation for engaging in protected activity under the Wage Act, however, she has not alleged any facts that establish a causal relationship between her activities and any adverse action she suffered. Finally, Plaintiff's claim for negligent hiring, supervision or retention is preempted by the Massachusetts Worker's Compensation Act ("WCA") and therefore Plaintiff is barred from relief. Count III also fails because Plaintiff has not alleged any facts that establish Liberty Mutual is liable for such a claim.

For these reasons, Plaintiff's Complaint fails as a matter of law and should be dismissed in its entirety.

## I.      PROCEDURAL BACKGROUND

Plaintiff initiated this action on November 23, 2018, when she filed her Complaint in the Commonwealth of Massachusetts Middlesex County Superior Court.[1] After being served with a Summons and a copy of the Complaint on February 20, 2019, Liberty Mutual timely removed the case pursuant to 28 U.S.C. § 1441 *et seq*. on March 12, 2019, on grounds that this Court has federal question jurisdiction over Plaintiff's claim that Liberty Mutual violated the FMLA.

## II.     FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF'S CLAIMS[2]

Plaintiff was hired as a claims adjuster by Liberty Mutual in or around 2000. (Compl. at ¶ 6). Plaintiff maintains that during the course of her employment, she provided Liberty Mutual

---

[1]Prior to her Complaint, on April 6, 2017, Plaintiff filed a Charge of Discrimination with the Massachusetts Commission of Discrimination alleging claims of discrimination based on disability and race, harassment and retaliation under M.G.L. c. 151B.  These claims *are not* included in the Complaint and thus are not before this Court.

[2] Allegations in the Complaint are taken as true for purposes of this Motion to Dismiss only. Liberty Mutual denies that it is liable to Plaintiff under any legal theory.

with medical records to substantiate her serious health condition. (Compl. at ¶ 9). Plaintiff requested FMLA leave in 2009 for her serious health condition. (Compl. at ¶ 11).

On or around November 22, 2016, Mr. Mathers asked all of his employees to provide him with their requests for time off through the end of the calendar year. (Compl. at ¶ 25). Plaintiff responded to Mr. Mathers's inquiry with requested time off, which Mr. Mathers denied. *Id.* Following the denial, Plaintiff explained to Mr. Mathers "that her mental illness was impacting her overall health" and her requested time off was necessary for her to be able to function. *Id.* Mr. Mathers upheld his denial of Plaintiff's request. *Id.* Neither Mr. Mathers nor Human Resources advised Plaintiff of her rights under FMLA. *Id.*; Compl. at ¶¶ 26 – 27, 30, 47, 56.

On December 2, 2016, Plaintiff spoke with Mr. Mathers and "expressed that she was struggling with the symptoms of her serious health condition." (Compl. at ¶ 27). Mr. Mathers responded by telling Plaintiff everyone suffers losses and that she had gotten sufficient support from Liberty Mutual. *Id.* After Plaintiff's conversation with Mr. Mathers, Plaintiff contacted Human Resources to file a formal complaint against him. *Id.* Upon Plaintiff's "information and belief," Human Resources did not fully investigate this complaint. (Compl. at ¶ 28, 31).

In early December 2016, shortly after her report about Mr. Mathers, Plaintiff requested and took a leave of absence for her serious health condition. (Compl. at ¶ 31). Plaintiff has not returned to work since that time in part because she has been "constructively discharged" as the result of the "intolerable working environment" Liberty Mutual essentially created. (Compl.at ¶ 30).

While Plaintiff was on leave several of her requests for employment-related benefits were denied. (Compl. at ¶ 29). In early December 2016, Plaintiff applied for short-term disability benefits, the approval for which was delayed. (Compl. at ¶ 30 - 31). Moreover, Plaintiff did not

receive disability benefits from March 2017 to June 2017, and stopped receiving them again after May 2018. (Compl. at ¶ 44, 52).

Plaintiff participated in a Flexible Spending Account ("FSA") program at Liberty Mutual, under which she could use funds deducted from her paycheck, pre-tax to cover qualified expenses. (Compl. at ¶ 37). The deadline to submit claims to the FSA was March 31, 2017. *Id.*

On March 22, 2017, Plaintiff submitted claims in the amount of $1,200.00 to her FSA, which were denied. *Id.* On March 27, 2017, Plaintiff informed a Liberty Mutual Benefits/Human Resources representative that she had filed a complaint with the Attorney General's office. *Id.* That same day, Plaintiff was informed that her account was in "non-payment status" and the funds were deemed forfeited. *Id.*

In or around August 2017 Liberty Mutual stopped providing health insurance coverage to Plaintiff. (Compl. at ¶ 47). Additionally, on September 6, 2017, Liberty Mutual sent Plaintiff a notice that her position had been eliminated. *Id.* On November 8, 2018, Liberty Mutual sent Plaintiff a letter informing her that she would be terminated on December 12, 2018. (Compl. at ¶ 51[3]).

## III.    ARGUMENT

### A.  Legal Standard under Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a probability requirement, but [requires] more than a sheer possibility ...." *Ashcroft,* 550 U.S. at 678.

---

[3] Plaintiff's Complaint is misnumbered as it contains two paragraphs numbered "51." Liberty Mutual's citation here is referring to the allegations in Plaintiff's "second" paragraph 51.

Therefore, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quotation omitted). The Court must accept as true all factual allegations underlying the claim and draw all reasonable inferences in favor of the non-moving party. *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011).

In the instant matter, even when all of the allegations in the Complaint are viewed in Plaintiff's favor, she is unable to demonstrate that she states any claim entitling her to relief. Liberty Mutual is, therefore, entitled to judgment as a matter of law, and this Motion to Dismiss should be granted in its entirety.

**B.  Plaintiff Fails to State a Claim for Relief Under the FMLA**

*i. Plaintiff Has Not Alleged Sufficient Facts to Establish a Claim of FMLA Interference.*

Plaintiff argues that Liberty Mutual "failed to properly grant [Plaintiff's] requested time off from work due to a serious health condition, did not notify her of her rights under the FMLA, and failed to follow the required course of action when an employee requests time off due to a serious health condition." (Compl. at ¶ 56).  In doing so, Liberty Mutual denied, interfered with and impaired Plaintiff's right to leave. (Compl. at ¶ 57).

In order to make out a *prima facie* case for FMLA interference, Plaintiff must show that (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Chacon v. Brigham and Women's Hosp.*, 99 F. Supp. 3d 207, 213-14 (D. Mass. 2015).

The FMLA creates a series of substantive rights or entitlements for eligible employees, defined as those who have been employed "for at least 12 months by the employer [...]; and [f]or at least 1,250 hours of service with such employer during the previous 12-month period." *29*

*U.S.C § 2611 (2)(A)*. Eligible employees are granted the right to "a total of 12 workweeks of leave during any 12–month period" because of a "serious health condition that makes the employee unable to perform the functions of the position of such employee." *29 U.S.C. § 2612(a)(1)*. The FMLA further requires employers to "maintain coverage under any 'group health plan' [...] for the duration of such leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave." *29 U.S.C. § 2614(c)(1)*.

At the outset, under the FMLA's regulations, "when an employee seeks leave due to a FMLA–qualifying reason, for which the employer has previously provided FMLA-protected leave, the employee must specifically reference the qualifying reason for leave or the need for FMLA leave." *29 C.F.R. § 825.302(c)*.   Prior to her 2016 leave of absence, Liberty Mutual granted Plaintiff leave under the FMLA to attend to her serious health condition. (Compl. at ¶ 10). Thus, if and when Plaintiff needed additional leave under the FMLA for her serious health condition, she was required to state so explicitly.   *See gen. Szabo v. Trustees of Boston University*, No. CIV. A. 96-10806-GAO, 1998 WL 151272, at *5 (D. Mass. Mar. 18, 1998), aff'd, 181 F.3d 80 (1st Cir. 1998) ("before an employee is entitled to FMLA protection, she must tell her employer the reason why she must be absent from work"). Instead, Plaintiff's request for leave on November 22, 2016, was in response to Mr. Mathers's general request for the department's time off needs. (Compl. at ¶ 25).   Plaintiff does not allege that she gave Mr. Mathers any indication at that point that she required leave for her qualifying condition or that she was specifically requesting FMLA leave. Plaintiff only informed Mr. Mathers of the reason for her request for time off, *i.e.,* to address her struggles with the symptoms of her mental illness,

*after* her initial request had been denied, and even then, her statements fall short of the FMLA's regulatory requirements.[4]  *Id.*

In any event, the mere failure to provide Plaintiff with notice of her FMLA rights is insufficient to support a claim of interference where there is no evidence that Plaintiff suffered any harm from this failure.  Indeed, both the Supreme Court and the First Circuit have held that where an employee has exhausted her FMLA-allotted twelve (12) weeks, she has no remedy for any alleged violation of the FMLA's notice requirements, unless she can show "that the lack of notice caused some prejudice (*e.g.*, that the employee would not have structured leave in the same way had notice been provided) ..."  *Dube v. J.P. Morgan Investor Services*, 201 Fed. Appx. 786, 788 (1st Cir. 2006); *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89-90, 122 S. Ct. 1155 (2002); *Bellone v. Southwick-Tolland Reg'l Sch. Dist.*, 915 F. Supp. 2d 187, 195 (D. Mass. 2013), *aff'd*, 748 F.3d 418 (1st Cir. 2014) (finding that "late or inadequate notices in and of themselves [...] are not actionable unless they somehow harm the employee").

Here, there is *no allegation* in Plaintiff's Complaint that she would have utilized her twelve weeks of FMLA leave differently if she had received notice of her FMLA rights. Indeed, Plaintiff states that she commenced a leave of absence for her medical condition in early December 2016, and remained out of work for almost two years, during which time she admittedly never made any effort to return.  (Compl. at ¶ 30 -31).  In doing so, any FMLA-protected leave Plaintiff was entitled to exhausted in or around the first week of March 2017*, i.e.*, twelve-weeks after it began, along with any obligations under the FMLA for Liberty Mutual to maintain Plaintiff's health insurance and reinstate her to the same or an equivalent position. *See Ragsdale*, 535 U.S. at 90 (finding no prejudice where plaintiff was not medically cleared to

---

[4] One could reasonably infer that Plaintiff's claim that her time off was necessary for her mental health was disingenuous where she only raised it after her request was initially denied.

return to work); *Bellone*, 915 F. Supp. 2d at 195 (*citing Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 331 (1st Cir. 2005)) (finding "an employee is not entitled to reinstatement under the FMLA if he/she is unable to return to work until after the expiration of the FMLA leave").

Moreover, any suggestion that Plaintiff should have continued to receive the protections of FMLA after she exhausted her allotted twelve weeks in or around March 2017 is without legal foundation. Indeed, for Plaintiff to reestablish her eligibility for FMLA, she would have needed to return to work and complete "at least 1,250 hours of service." *See 29 U.S.C. § 2611(2)(A)(ii);* (Compl. at ¶ 30).   Since Plaintiff did not do so, she was never again eligible for FMLA leave.

### ii. Plaintiff Has Not Alleged Sufficient Facts to Establish a Claim of Retaliation Under the FMLA.

Plaintiff asserts that Liberty Mutual subjected her to adverse employment actions, to include "constructively discharging" Plaintiff by creating an "intolerable work environment" and "loss of pay", in retaliation for her protected activities.[5] (Compl. at ¶ 55).

A *prima facie* case of FMLA retaliation requires Plaintiff to show that (1) she availed herself of a protected FMLA right; (2) she was "adversely affected by an employment decision;" and (3) "there was a causal connection between [her] protected conduct and the adverse employment action." *Orta–Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.,* 447 F.3d 105, 113–14 (1st Cir. 2006). The key difference between retaliation and a claim of FMLA interference is causation: where motive is generally irrelevant to an interference claim, a retaliation claim requires an allegation (and, ultimately, proof) of a retaliatory motive on the part of the employer. *See Bellone*, 915 F. Supp. 2d at 193.

---

[5] It should be noted that Plaintiff's allegations that she was retaliated against by one of her former managers, Mr. Berenson, a month after she took a leave of absence in December 2009, are outside the general two-year statute of limitations set forth in 29 U.S.C. § 2617(c)(1), and are therefore time-barred.

Generally, in order to establish a claim of "constructive discharge" the plaintiff must establish that the offending conduct left him/ her no choice but to resign from employment. *See Sensing v. Outback Steakhouse of Fla., LLC,* 575 F.3d 145, 160 n.18 (1st Cir. 2009) (finding resignation a necessary element of a constructive discharge claim). Here, Plaintiff's claim that she was "constructively discharged" is undercut by the fact that Plaintiff has not alleged anywhere in the Complaint that she actually resigned from employment. Indeed, Plaintiff avers that she learned her position was eliminated on or around September 6, 2017 and her employment was subsequently terminated on December 12, 2018. (Compl. at ¶ 47, 51). Accordingly, as a matter of law, Plaintiff has not demonstrated that she was "constructively discharged."

Moreover, Plaintiff has not pled facts plausible to establish a causal connection between her alleged protected activity, *i.e.*, taking leaving for her serious health condition, and any adverse action she suffered. There is nothing in the Complaint establishing that Mr. Mathers was involved in Plaintiff's application for disability benefits, the administration of her FSA, or the termination of her health insurance benefits. Likewise, Plaintiff has not alleged any facts demonstrating that any of the individuals administering her employee benefits were aware of her protected activity under FMLA. Accordingly, Plaintiff has not sufficiently established that any of Liberty Mutual's actions towards her were motivated by a retaliatory animus.

To the extent that Plaintiff is attempting to argue that the elimination of her position and subsequent termination were in any way related to her alleged protected activities under the FMLA, these events occurred almost a full-year after the exhaustion of Plaintiff's FMLA rights, and thus are far too attenuated to support a claim of retaliation. (Compl. at ¶ 47, 51); *see Szabo,*

1998 WL 151272, at *6 (finding no plausible connection with the termination of plaintiff's employment some six or seven months after the protected conducted).

Because Plaintiff's has not sufficiently established that Liberty Mutual interfered with or retaliated against her for exercising her rights under FMLA, Count I of the Complaint fails as a matter of law and should be dismissed.

### C. Plaintiff's Claim Under the Massachusetts Wage Act is Preempted by ERISA and Fails to State a Claim for Relief.

*i. Plaintiff's Claims for Unpaid Wages Under the Massachusetts Wage Act and Breach of Contract are Preempted by ERISA.*

Plaintiff alleges that Liberty Mutual violated the Massachusetts Wage Act as well as committed a breach of contract when it withheld the funds in Plaintiff's FSA, preventing her from being reimbursed $1,200.00. (Compl. at ¶ 85). It has been recognized by this Court that the FSA benefits, like those referenced in the Complaint, qualify as a benefit plan covered by ERISA. *See Nahigian v. Leonard*, 233 F. Supp. 2d 151, 155 (D. Mass. 2002) (noting *in dicta* that a flexible spending account is a benefit governed by ERISA).

ERISA contains an exclusive civil enforcement provision at § 502(a), 29 U.S.C. § 1132(a), which provides a private cause of action for participants or beneficiaries of ERISA plans. Among other things, § 502(a) entitles beneficiaries to bring actions to "recover benefits due to him[/her] under the terms of his[/her] plan, to enforce his[/her] rights under the terms of the plan, or to clarify his[/her] rights to future benefits." *Hamilton v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 397, 412 (D. Mass. 2016). "ERISA preempts a state law that has a connection with or refers to an ERISA-regulated benefits plan, 'even if the law is not specifically designed to affect such plans, or the effect is only indirect and even if the law is consistent with ERISA's substantive requirements." *Gordon v. AstraZeneca AB*, 199 F. Supp. 3d 325, 332 (D.

10

Mass. 2016). A state law claim that falls within § 502(a) can be "properly characterized as an 'alternative enforcement mechanism' of ERISA § 502(a) or of the terms of an ERISA plan." *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 5 (1st Cir.1999)

There can be no dispute that Plaintiff's claims fall squarely within § 502(a) of ERISA, and thus are completely preempted. Plaintiff's claims are based entirely on her right to certain benefits under an ERSIA plan offered by Liberty Mutual, *i.e.*, the FSA program, and Liberty Mutual's alleged denial of those rights. Accordingly, Plaintiff's claims fail as a matter of law as they are completely preempted by ERISA.

> *ii. Plaintiff Has Not Alleged Sufficient Facts to Establish a Claim of Retaliation Under the Massachusetts Wage Act.*

Plaintiff alleges that Liberty Mutual retaliated against her for filing a complaint at the Attorney General's Office. (Compl. at ¶ 84). Indeed, Plaintiff alleges that the forfeiture of her FSA benefits was in retaliation for attempting to exercise her statutory rights. (Compl. at ¶ 37).

Plaintiff's claim for retaliation fails at the outset as she concedes that she did not inform Liberty Mutual of her complaint to the Attorney General until *after* her claims for reimbursement had been denied. (Compl. at ¶ 37); *See Karatihy v. Commonwealth Flats Dev. Corp.,* 84 Mass. App. Ct. 253, 256, (2013) (noting that there is no inference of causation when adverse employment actions predated protected activity). Even though Liberty Mutual allegedly informed Plaintiff that her FSA was in non-payment status and the funds were considered forfeited after she disclosed her complaint to the Attorney General, such a fact is insufficient to establish causation without more. *Id.; see Karatihy*, 84 Mass. App. Ct. at 255 (*quoting Mole v. University of Mass.,* 442 Mass. 582, 592 (2004) (finding that the fact "that one event followed another is not sufficient to make out a causal link").

Because Plaintiff's claims for violations of the Massachusetts Wage Act and breach of contract are preempted by ERISA and Plaintiff has failed to sufficiently state a claim of retaliation, Count II of the Complaint fails as a matter of law and should be dismissed.

**D.  Plaintiff's Claim for Negligent Supervision is Preempted by the WCA and Fails to Allege Any Conduct by Liberty Mutual to Establish Liability Under Such a Claim.**

Plaintiff asserts that Liberty Mutual's negligent hiring, supervision, and retention of certain employees caused her harm. (Compl. at ¶ 89).

As an initial matter, common law claims against employers are barred by the WCA, M.G.L. c. 152, § 24, where "the plaintiff is shown to be an employee; [her] condition is shown to be a personal injury within the meaning of the [workers] compensation act; and the injury is shown to have risen out of and in the course of...employment." *John v. Amherst Nursing Home, Inc.*, Civil Action No. 14-30100-MGM, 2015 WL 4750932, *9 (D. Mass. August 11, 2015) (*quoting Green v. Wyman-Gordon Co.*, 664 N.E.2d 808, 813 (Mass. 1996)).  Massachusetts courts have explicitly held that a claim against an employer for negligence in hiring, supervising and retention is preempted by the WCA. *Id.* (*quoting Clarke v. Kentucky Fried Chicken of California*, 57 F.3d 21, 27-29 (1st Cir. 1995)).  Where, as here, Plaintiff alleges Liberty Mutual was negligent in hiring, supervising and retaining employees, such claims are barred against Liberty Mutual.

Even assuming for sake of argument only that preemption is not dispositive of this claim, Massachusetts courts have recognized that an employer has a duty to exercise reasonable care in the selection, supervision, and retention of employees who may come into contact with the public in order to protect the general public from harm. *See, e.g., Foley v. Boston Housing Auth.*, 407 Mass. 640, 643 (1990); *Copithorne v. Framingham Union Hosp.*, 401 Mass. 860, 862-65 (1988).  However, it has also been established that an employer's duty not to negligently

12

supervise employees generally runs *to the public*, not to other employees. *See Bell v. Rinchem Co., Inc.,* No. CV 4:14-40177-TSH, 2014 WL 11290899, at *18 (D. Mass. Dec. 2, 2014) (discussing case law supporting the proposition that this tort is "limited to violations of an employer's duty to protect the public at large from the misfeasance of its employees"). As Plaintiff's claim here is based solely on the conduct of Liberty Mutual's employees, she has not sufficiently alleged facts that establish Liberty Mutual's liability.

Moreover, Plaintiff has not alleged any facts that establish Liberty Mutual knew or should have known that Mr. Mathers or any other Liberty Mutual employee had a propensity to cause the harm Plaintiff allegedly suffered. *See Vicarelli v. Bus. Int'l, Inc.,* 973 F. Supp. 241, 246–47 (D. Mass. 1997) (dismissing the plaintiff's claim for negligent hiring, retention and supervision where the plaintiff failed to allege information that would have put the defendant on notice that the employee had a propensity for sexual harassment).  Indeed, Plaintiff did not submit a formal complaint against Mr. Mathers regarding any unlawful conduct until early December 2016, after which she went on a leave of absence from which she did not return (Compl. at ¶ 27, 31).

Because Plaintiff's claims for negligent hiring, supervision and retention are preempted by the WCA and Plaintiff has failed to allege facts to establish that Liberty Mutual is liable for such a claim, Count III of the Complaint fails as a matter of law and should be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, each count of the Plaintiff's Complaint against Liberty Mutual should be dismissed with prejudice by this Court, and the Defendant awarded its costs and reasonable attorneys' fees.

Respectfully submitted,

LIBERTY MUTUAL GROUP INC.

By its attorneys,


*/s/Jaclyn L. Kugell*

Jaclyn L. Kugell, Esq. (BBO# 561622)
Morgan, Brown & Joy, LLP
200 State Street, 11th Floor
Boston, MA 02109-2605
Phone: (617) 523 – 6666
Fax: (617) 367 – 3125
jkugell@morganbrown.com


Dated:  April 2, 2019

## **Local Rule 7.1 Certification**

Pursuant to Local Rule 7.1(a)(2), I hereby certify that prior to filing this motion, Defendant's counsel contacted Plaintiff's attorney to confer, in good faith, in an attempt to resolve or narrow the issue(s) in dispute but that the parties have been unable to do so.

*/s/Jaclyn L. Kugell*
Jaclyn L. Kugell

Dated: April 2, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 2, 2019.

*/s/Jaclyn L. Kugell*
Jaclyn L. Kugell

15