### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

**Civil Action No. 1:19-CV-10458**

**DINA FAVREAU,**
**        Plaintiff,**

**v.**

**LIBERTY MUTUAL GROUP,**
**INCORPORATED,**
**            Defendant.**
_____

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
### IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**I.    INTRODUCTION**

Now comes the Plaintiff, Dina Favreau ("Ms. Favreau") and respectfully moves this Court to deny the motion of Defendant, Liberty Mutual Group, Incorporated ("Liberty Mutual"). As grounds therefore, and as set forth more fully in the attached memorandum of law, Ms. Favreau states that she sufficiently plead facts for each of the claims in her complaint: (I) interference and retaliation under the Family and Medical Leave Act; (II) violations of the Massachusetts Wage and Hours Laws and breach of contract; and (III) negligent hiring, supervision and retention. As such, Liberty Mutual cannot meet its burden of showing that Ms. Favreau failed to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), and, Ms. Favreau therefore respectfully moves this Honorable Court to deny Liberty Mutual's motion to dismiss in its entirety.

## II.    <u>STANDARD OF REVIEW</u>

In reviewing the Defendant's motion to dismiss, the Court must take the "factual allegations in the complaint as true and make all reasonable inferences in plaintiff's favor." <u>Mississippi Pub. Employees' Ret. Sys. v. Boston Sci</u>., 523 F.3d 75, 85 (1st Cir. 2008). Fed.R.Civ.P. 8(a)(2) merely requires that a complaint contain a short and plain statement of the claim showing, that the plaintiff is entitled to relief, "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007). "[S]tating such a claim requires a complaint with enough factual matter (taken as true) to suggest [the required elements]." <u>Id</u>. at 556. A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. <u>See Id</u>. at 554-55, 563 n.8. "It is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage." <u>Rodríguez-Reyes v. Molina-Rodríguez</u>, 711 F.3d. 49, 54 (1st Cir. 2013). The Court must accept the Plaintiff's factual allegations as true, and draw all reasonable inferences in the Plaintiff's favor. <u>SEC v. Tambone</u>, 597 F.3d 436, 441 (1st Cir. 2010) (en banc).

To survive a motion to dismiss, the complaint must state a claim that is "plausible on its face." <u>Twombly</u> at 570. To give rise to a "plausible" claim, a complaint must plead factual allegations that "raise a right to relief above the speculative level… on the assumption that all the allegations in the complaint are true." <u>Id</u>. While this standard does not impose a "probability requirement," it does require "more than a sheer possibility that a defendant has acted unlawfully." Id. Engaging in this plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.at 679, <u>129 S.Ct. 1937</u>.

## III.    ARGUMENT

## A.    COUNT I: CLAIMS UNDER THE FMLA

Congress enacted the Family and Medical Leave Act of 1993 ("FMLA") "to help working men and women balance the conflicting demands of work and personal life. It does so by recognizing that there will be times in a person's life when that person is incapable of performing her duties for medical reasons." Hodgens v. General Dynamics Corp., 144 F.3d. 151, 159 (1st Cir. 1998) citing Price v. City of Fort Wayne,117 F.3d. 1022, 1024 (7th Cir.1997). See 29 U.S.C. § 2601(a)-(b). The FMLA's purpose is to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." Hodgens at 159, citing 29 U.S.C. § 2601(b)(1) & (2). "Among the findings prompting the Act was Congress's belief that 'there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods.'" Id. citing 29 U.S.C. § 2601(a)(4).

The FMLA created a series of substantive rights, including an eligible employee's entitlement of intermittent leave for medical treatment, and up to 12 weeks of leave per year due to a serious health condition that makes the employee unable to perform job functions, without the risk of employment termination. Id. citing 29 U.S.C. § 2612(a)(1)(D); 29 U.S.C. § 2611(11); 29 C.F.R. §§ 825.100(a), 825.114 (1997); 29 U.S.C. § 2614(a)(1); 29 C.F.R. §§ 825.100(c) (1997). The FMLA also provides protection in the event an employer discriminates against an employee who exercises rights under the FMLA. Id at 159-160, citing 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220 (1997).

"In keeping with its comprehensive remedial purpose 'to help working men and women balance the conflicting demands of work and personal life,' the FMLA should be broadly construed." Chase v. United States Postal Service, 843 F.3d. 553, 557 (1st Cir. 2016), quoting Hodgens at 164 and Price at 1024 (7th Cir. 1997)); and citing Tcherepnin v. Knight, 389 U.S. 332, 335 (1967) (noting that "remedial legislation should be construed broadly to effectuate its purposes."). As argued below, the FMLA created two types of claims to allow employees to preserve and enforce their rights under the FMLA; specifically, interference claims and retaliation claims. Ms. Favreau's complaint sets forth facts to support both types of claims, so the Court should deny Liberty Mutual's Motion to Dismiss, as it relates to Count I of the Complaint.

1. **Ms. Favreau Alleged Sufficient Facts For A Claim of Interference Under the FMLA.**

To protect the exercise of the substantive rights articulated in the FMLA, Congress has made it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" rights under the FMLA. 29 U.S.C. § 2615(a)(1). A prima facie case of FMLA interference requires a plaintiff to show that (1) she was eligible for the FMLA's protections; (2) the FMLA covered her employer; (3) she was entitled to leave; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. Chacon v. Brigham and Women's Hosp., 99 F. Supp. 3d. 207, 213 (D. Mass. 2015), citing Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d. 711, 722, n. 8 (1st Cir. 2014). The Employer's intent is irrelevant to an interference claim. Bellone v. Southwick-Tolland Regional School District, 915 F.Supp. 2d. 187 (D. Mass 2013).

The Complaints sets forth sufficient allegations to show that Ms. Favreau she was eligible for the FMLA's protections; the FMLA covered Liberty Mutual, and that Ms. Favreau was

entitled to leave. See e.g. Complaint, paragraphs 6, 62-64. The Complaint alleges that Ms. Favreau  gave Liberty Mutual notice of her intention to take leave. See e.g. Complaint, paragraphs 20, 25, 26, 27. The Complaint also alleges that Liberty Mutual denied her the requested FMLA benefits to which she was entitled. See e.g. Complaint, paragraphs 25, 26, 27, 66. Contrary to Liberty Mutual's argument, Liberty Mutual never granted Ms. Favreau FMLA-protected leave, and the Complaint alleges that Liberty Mutual denied her such leave. Her supervisor denied her specific request for leave in November, 2016, after receiving reports of her stress and mental health issues since July of 2016. See e.g. Complaint, paragraphs 16 - 25. The Complaint therefore sets forth all of the elements of a prima facie case of a claim of interference.

The Complaint also alleges sufficient facts for an interference claim based upon failure to follow notice requirements under the FMLA. Failure to follow notice requirements may give rise to an interference claim if the employee shows that lack of notice caused some harm. Id. citing Dube v. J.P. Morgan Investor Serv., 201 Fed. Appx. 786, 788 (1st Cir. 2006), Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89, 81 (2002) and 29 C.F.R. 825.300(e). In conjunction with Liberty Mutual's improper denial of Ms. Favreau's request for leave, she states that she was subjected to an intolerable work environment due to the hostility created, and she suffered a constructive discharge. See Complaint, paragraphs 30-32, 73. Had Liberty Mutual complied with the notice requirements of the FMLA, Ms. Favreau would have known that she was taking leave with approval, and with job protection for 12 weeks. Instead, she was forced to leave because of conditions she deemed intolerable, and the actions of Liberty Mutual did nothing to make her believe that she was taking leave with her employer's approval and job

protection. Already dealing with a mental illness, Liberty Mutual's lack of compliance failed to provide Ms. Favreau the confidence necessary to tend to her mental health on an approved leave; rather, Liberty Mutual's actions and failure to properly comply with notice requirements exacerbated Ms. Favreau's pre-existing mental health issues, forcing her to stop working - without her Employer's approval - during a volatile time with her Employer as the result of her request for time off, while she was already working in an intolerable environment. Ms. Favreau's forced leave without notice and approval required Ms. Favreau to take the risk of taking necessary leave, without having any confidence that her leave was protected or that she could return to her job. Liberty Mutual's argument that Ms. Favreau's complaint fails to assert a proper claim based upon notice requirement accordingly lacks merit.

Liberty Mutual's argument that Ms. Favreau failed to explicitly state the reasons for her necessary leave also completely lack merit. The Complaint shows that Liberty Mutual knew Ms. Favreau suffered from mental illness and that Liberty Mutual had previously granted Ms. Favreau FMLA leave in 2007 and 2009. See e.g. Complaint, paragraphs 10,11. Ms. Favreau began reporting her increased stress to her supervisor in the summer of 2016. See e.g. Complaint, paragraphs 16, 17. Ms. Favreau informed Liberty Mutual staff in August of 2016 that new medical issues may require hospitalization. See e.g. Complaint, paragraphs 17. In September of 2016, Ms. Favreau continued to discuss her stress with her supervisor. See Complaint, paragraph 18. In October of 2016, Ms. Favreau informed her supervisor that a death in the family was exacerbating her pre-existing mental health issues. See e.g. Complaint, paragraphs 20. In October, 2016, after her niece's funeral, she opening discussed at work how her work and personal stressors were causing additional health problems. See e.g. Complaint, paragraph 23.

Throughout the Fall and early winter of 2016, Ms. Favreau reported to her supervisor on several occasions that she was struggling with mental health issues. <u>See</u> e.g. Complaint, paragraphs 24. On November 22, 2016, she informed her supervisor of significant mental illness issue, and requested time off to address those issues. <u>See</u> Complaint, paragraph 25. After her supervisor denied her request, Ms. Favreau exhibited symptoms in her supervisor's presence at work, crying uncontrollably during an entire meeting on November 28, 2016. <u>See</u> e.g. Complaint, paragraph 26. On December 2, 2016, Ms. Favreau once again told her supervisor that she was struggling with her mental health symptoms at work, but rather than approve her leave, he told her that everyone suffers personal losses and that she had already received sufficient support from her employer. <u>See</u> e.g. Complaint, paragraph 27. Accordingly, Liberty Mutual's argument that Ms. Favreau's complaint did not allege that she explicitly advised her employer of her need for leave due to a serious health condition completely lacks merit. Ms. Favreau hence appropriately asserted a claim for interference in her complaint, so the Court should deny Liberty Mutual's motion to dismiss as to Count I.

**2.  <u>Ms Favreau Alleged Sufficient Facts For A Claim of Retaliation Under the FMLA.</u>**

The Complaint contains allegations of fact to make out a claim for retaliation under the FMLA. A prima facie case of retaliation requires the employee to show that (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. <u>Chase</u> at 558. Because the employer's intent in FMLA retaliation claims is highly relevant, an employer cannot be found to have retaliated against an employee for invoking rights under the FMLA or taking FMLA leave unless the decisionmaker

knew or should have known that the employee had invoked those rights. See Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 70 (1st Cir. 2015). "[A] crucial component of an FMLA retaliation claim is some animus or retaliatory motive on the part of the plaintiff's employer that is connected to protected conduct."). Pagán-Colón v. Walgreens of San Patricio, Inc., 697 F. 3d. 1, 8 (1st Cir. 2012).

Ms. Favreau's complaint clearly sets forth the necessary allegation to show a claim of retaliation. The Complaint shows that Ms. Favrea availed herself of a protected right under the FMLA, when she specifically requested leave for an identified serious health condition. See Complaint, paragraph 25.

The Complaint further shows that she was adversely affected by an employment decision; specifically, her supervisor's denial of her request for leave. When Ms. Favreau expressed her need to take time off, her supervisor not only denied the request twice, but also stated that she had been out of work too much; told her that she "should be getting back to normal by now," stated that "everyone suffers personal losses; and told her that she had already received sufficient support from Liberty Mutual. See Complaint, paragraphs 25-29. Knowing that she needed to take leave from work to deal with her medical condition, and learning of her supervisor's unequivocal denial of her request, Ms. Favreau was adversely affected by the employment decision to deny her request for leave. Upon receiving notice of the inappropriate comments and denial of rights, she could not function sufficiently to perform her job, which was exactly the circumstance she was trying to prevent with a medical leave. Ms. Favreau's mental health symptoms exacerbated, and she could not tolerate working in such an environment. Liberty Mutual's actions were tantamount to constructive discharge.

Both the exacerbations of her mental health and the constructive discharge due to hostile work conditions resulted from the Liberty Mutual's improper denial of Ms. Favreau's request for leave under the FMLA. Having left work without Liberty Mutual's approval, due to offensive conduct, Ms. Favreau alleged sufficient information to show a constructive discharge, or at a minimum the requisite adverse employment action element of a retaliation claim. Her supervisor's comments about her FMLA request alone show direct evidence of animus for exercising her right to take medical leave under the FMLA. Ms. Favreau's complaint therefore sufficiently alleges a claim of retaliation, and the Court should accordingly deny Liberty Mutual's Motion to Dismiss as to Count I.

**B.**     **COUNT II: CLAIMS UNDER THE WAGE AND HOUR LAWS**

**1.**     **Ms. Favreau's Claims Regarding Her FSA Plan Are Not Preempted By ERISA Because Ms. Favreau's Claim Because The Claims Do Not Relate to ERISA.**

"When the resolution of state law claims will neither 'determine whether any benefits are paid' nor 'directly affect the administration of benefits under the plan,' the claims do not 'relate to' ERISA and accordingly are not preempted." DeSantis v. Commonwealth Energy System, 68 Mass. App. Ct. 759, 770 (2007), citing Pace v. Signal Technology Corp., 417 Mass. 154, 159 (1994), and quoting from Cuoco v. NYNEX, Inc., 722 F. Supp. 884, 887 (D. Mass. 1989). The Court applies two tests to determine whether a state cause of action is preempted because it "relates to" an ERISA plan: (1) a law is expressly preempted by ERISA where "the Court's inquiry must be directed to the plan;" and (2) a cause of action is preempted if it conflicts directly with ERISA. Carlo v. Reed Roller Thread Die Co., 49 F.3d. 790, 793 (1st. Cir. 1995).

Here, Ms. Favreau is not asking for a benefit under the FSA Plan. Her claim does not affect administration of benefits under the plan. Ms. Favreau alleges that she was mislead to

believe that she was entitled to $1,200.00 under the FSA plan, due to deductions taken from her paycheck. Since she discovered that Liberty Mutual took action to ensure that she would not receive the money deducted from her paycheck, she is asking for a return of the funds deducted. No part of Ms. Favreau's claim involves a law expressly preempted by ERISA; the Court's review of an FSA plan; or a direct conflict with ERISA. Ms. Favreau was mislead to believe that funds taken from her paycheck entitled to her to participation in an FSA plan. Her complaint alleges that funds were not available to her through the FSA plan, and that she received inconsistent information about her ability to participate in the plan. Ms. Favreau is therefore simply seeking Liberty Mutual to pay Ms. Favreau those wages that she earned and never received. Since this claim does not relate to ERISA nor require any interpretation of a plan, the Court should deny Liberty Mutual's motion to dismiss Count II.

> 2. **Ms. Favreau Properly Alleged A Claim of Retaliation Under The Wage Act**.

Ms. Favreau's complaint properly alleges a claim of retaliation, because it alleges an adverse action taken after Ms. Favreau notified Liberty Mutual that she filed a complaint with the Attorney General. "Any employer who … discriminates against any employee because such employee has made a complaint to the attorney general … under [M.G.L. c. 149], or has instituted, or caused to be instituted any proceeding under or related to this chapter ... shall be punished or shall be subject to a civil citation or order …" See M.G.L. c. 149, sec. 148A.

Ms. Favreau alleged that she submitted a FSA claim on March 22, 2017. She alleged that the claim was denied, without explanation, on March 24, 2017. On March 27, 2017, Ms. Favreau notified Liberty Mutual that she filed a complaint with the Attorney General. After telling Liberty Mutual that she filed a complaint, Liberty Mutual issued a letter stating that it placed her

benefits on non-payment status. <u>See</u> Complaint, paragraph 37. Therefore, contrary to the Defendant's argument, the Complaint is void of any allegation showing that an adverse action pre-dated protected activity. Ms. Favreau's complaint accordingly meets the standards for pleading her claim of retaliation under the wage act, and the Court should accordingly deny Liberty Mutual's motion as to Count II.

**C.      <u>COUNT III</u>:   CLAIMS FOR NEGLIGENT SUPERVISION**

Liberty Mutual's argument that the workers' compensation act preempts Ms. Favreau's claim of negligent supervision is overbroad. The workers compensation law in Massachusetts, M.G.L. c. 152, bars common law actions only where a plaintiff employee alleges a "personal injury" within the meaning of c. 152, and that such injury arose out of the course of employment. <u>Green v. Wyman-Gordan Co</u>., 664 N.E. 2d. 808, 813 (Mass. 1996). Ms. Favreau alleges denial of pay and employment benefits under state and federal statutes: the Massachusetts Wage and Hour Laws and the FMLA. As such, M.G.L. c. 152, does not bar Ms. Favreau's claims for denial of pay and benefits and the Court should deny Liberty Mutual's motion to dismiss Count III.

**IV.     <u>CONCLUSION</u>**

WHEREFORE, the Plaintiff, Dina Favreau, respectfully requests that this Honorable Court deny the Defendant's Motion to Dismiss in its entirety, and award the Plaintiff costs, attorneys fees and any other relief the Court deems just.

April 30, 2019                                   Respectfully submitted,

                                                 Plaintiff, Dina Favreau,
                                                 By Her Attorneys,

                                                 */s/ Kimberley A. McMahon*

                                                 _____
                                                 Kimberley A. McMahon
                                                 B.B.O # 641398A
                                                 <u>kimberleyamcmahon@gmail.com</u>
                                                 Brenden J. McMahon, Esq.
                                                 B.B.O. #: 644765
                                                 <u>BJMcMahon@comcast.net</u>
                                                 McMahon Law Group
                                                 144 Merrimack Street, Suite 444
                                                 Lowell, Massachusetts 01852
                                                 (978) 455-1117

**<u>Certificate of Service</u>**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). I further certify that paper copies will be sent to those indicated as non-registered participants.

                                   /s/        *Kimberley A. McMahon*
                                   Kimberley A. McMahon, Esquire (BBO 641398A)

                                   <u>Dated:</u> April 30, 2019