```
_____
                               )
DINA FAVREAU,                  )
                  Plaintiff,   )
                               )
          v.                   )          CIVIL ACTION
                               )          NO. 19-10458-WGY
LIBERTY MUTUAL, INC.,          )
                               )
                  Defendant.   )
_____)
```

YOUNG, D.J.                                    March 18, 2020

## MEMORANDUM AND ORDER

## I.    INTRODUCTION

Dina Favreau ("Favreau") filed this complaint against her
former employer, Liberty Mutual Group Inc. ("Liberty Mutual")
for the alleged violation of her rights under the Family and
Medical Leave Act ("FMLA"), 29 U.S.C., § 2601, et. seq.  Pl.'s
Mot. Leave File Am. Compl. Jury Demand ("Pl.'s Mot."), ECF No.
24; Pl.'s Mot., Ex., Am. Compl. Jury Demand ("Am. Compl."), ECF
No. 24-1.  Liberty Mutual requested this Court not allow the
amended complaint because some of its claims are time barred,
and the surviving factual allegations do not state a claim upon
which relief may be granted.  Def.'s Opp'n Pl.'s Mot. Leave File
Am. Compl. ("Def.'s Opp'n"), ECF No. 29; Def. Liberty Mutual
Resp. Order Show Cause ("Def.'s Resp."), ECF No. 34.  This Court

ALLOWS in part and DENIES in part the motion for leave to file the amended complaint.

## A.    Facts Alleged

Favreau started working for Liberty Mutual in 2000, as a claim adjuster.  Am. Compl. ¶ 4.  In 2006, Favreau was diagnosed with Major Depression and Post Traumatic Stress Disorder, which she communicated to her supervisors in early January 2007, prior to taking an approved medical leave of absence.  Id. ¶¶ 5-7. Favreau requested another medical leave of absence on December 2009.  Id. ¶ 8.  Shortly thereafter, Favreau's supervisor Berenson issued a "written warning" requesting she comply with an improvement plant.  Id.  Although Favreau believed that it was a retaliatory measure, she successfully complied with the improvement plan.  Id.  In late 2015, Favreau's health declined, limiting major life activities, though Liberty Mutual informed her she successfully carried out her work goals for the year. Id. ¶¶ 9-11.

In June 2016, while on a business trip to Atlanta, Favreau did not laugh at a statement made by her supervisor Mathers referring to an African American taxi driver as a "fucking monkey."  Id. ¶ 12.  That night Berenson and Mathers tried to persuade Favreau not to report the situation to Human Resources. Id.  Another co-worker then told Favreau that reporting the conduct would be futile and could end in retaliation against

her.  Id.  After that trip, Mathers increased Favreau's
workload, causing her to express concern that it would affect
her productivity, as she lacked the necessary staff.  Id. ¶ 13.
In response to her concerns, in September 2016 "she was allowed
to extend her diary in order to balance the increased volume" of
work.  Id. ¶¶ 13, 15.  On September 12, 2016, however, Mathers
denied without explanation Favreau's request for a temporary
moratorium on new claims.  Id. ¶ 15.

    On October 9, 2016 Favreau's niece passed away, further
exacerbating her mental health, Post Traumatic Stress Disorder
and Major Depressive Disorder symptoms.  Id. ¶ 17.  Favreau
reported this situation to Mathers, and Liberty Mutual approved
-- without notice under FMLA -- her temporary request for leave
to attend to her niece's services and manage her own mental
health.  Id.  Favreau alleges that after this event Mathers
told Liberty Mutual's security guard that he "could not stand"
her.  Id. ¶ 18.  After Favreau returned from her leave, she
alleges that Mathers created a hostile work environment in the
following manner: (i) on October 25, 2016 she learned that all
other similarly situated employees were approved a stipend for
increased workload, while she "was forced to fight" to get
approval, (ii) he increased her work load to "substantially more
cases than her co-workers," and (iii) he would spy on her.  Id.
¶¶ 19-22, 27.

From October to December 2016, Favreau reported to Mathers that she was "struggling with her mental health issues," but he failed to provide her notice of her rights under the FMLA.  Id. ¶ 23.

On November 22, 2016 Mathers asked all employees to inform him of requests for holiday leave.  Id. ¶ 24.  Favreau was denied time off.  Id.  She informed Mathers that she needed that time to attend to her mental health condition, but he stated that her request was denied because she had been out of the office too much.  Id.  After this event, Mathers increased Favreau's workload disproportionately (while she was assigned 150-200 cases, other co-workers managed 30-40 cases), and assigned her "menial and time-consuming tasks" that would not provide opportunities for career advancement.  Id. ¶ 25.

On November 28, 2016, during a video conference with Mathers, Favreau "could not control the manifestation of the symptoms of her illness," and cried the entire time, to which Mathers commented that she should be getting back to normal by now.  Id. ¶ 26.  Neither Mathers nor Liberty Mutual provided her notice of her rights under the FMLA.  Id.

On December 2, 2016 Mathers told Favreau that her performance was below Liberty Mutual's standards, to which she explained that she was struggling with the symptoms of her serious health conditions.  Id. ¶ 28.  Favreau felt she required

leave under the FMLA, but Mathers denied it, indicating that everyone suffers personal losses, and that she had already received sufficient support from her employer. Id. Because of Mather's refusal, she contacted Human Resources to file a formal complaint. Id. On that day, Favreau "felt she had no choice but to leave work due to her intolerable working environment created due to her requests for leave," and she decided not to return to work since. Id. ¶¶ 28-30. Favreau does not state when she stopped receiving a salary.

In early December 2016 Favreau applied for short term disability benefits, but on March 17, 2017 Liberty Mutual stopped paying these short-term disability without explanation. Id. ¶ 32. On March 22, 2017 Favreau applied for Social Security Disability benefits, id. ¶ 34, and the same day she submitted a claim before Liberty Mutual to apply her saved funds from her Flexible Spending Account towards medical services. Id. ¶ 35. On March 24, 2017 Liberty Mutual denied her claim. Id. To get that decision revised, Favreau called Liberty Mutual on March 27, 2017 and informed them that she had filed a complaint against them with the Attorney General, and afterwards, Liberty Mutual then placed her benefits on non-payment status and deemed her funds forfeited. Id. Favreau believes that "the forfeiture occurred in retaliation for filing complaints and attempting to exercise her statutory rights under the FMLA." Id.

On April 6, 2017 Favreau filed a complaint against Liberty Mutual before the Massachusetts Commission Against Discrimination (the "Commission") alleging disability discrimination and retaliation.  Id. ¶ 37.

On April 19, 2017 Favreau requested of Liberty Mutual documentation regarding her disability benefits.  Id. ¶ 39. Liberty Mutual replied and attached a letter dated December 2, 2016, in which her FMLA leave was approved.[1]  Id.  Favreau contends that she was neither aware of the letter nor had she seen it before April 19, 2017.  Id.; Pl.'s Resp. 10.

From March to June 2017 Liberty did not pay her short-term disability benefits.  Am. Compl. ¶ 45.  On July 11, 2017 Liberty Mutual denied the claim for disability, id. ¶ 46, because Favreau's treating physician opined that she was NOT disabled. Id. ¶ 47.

In August 2017 the Commission held an investigative conference for Favreau's claim.  Id. ¶ 48.  On August 2017 Liberty Mutual cancelled Favreau's health insurance.  Id.  On September 6, 2017, Liberty Mutual notified Favreau that her current position was eliminated.  Id.  In May of 2018 Favreau's

---

[1] Favreau's Amended Complaint states that the letter is dated December 2, 2017, Am. Compl. ¶ 39, but she later acknowledges the letter is dated December 2, 2016.  Pl.'s Resp. Order Show Cause ("Pl.'s Resp.") 10, ECF No. 33.  See also Def.'s Opp'n, Ex. A, Dec. 2, 2016 Letter from Liberty Mutual to Dina Favreau 4, ECF No. 29-1.

disability benefits stopped again.  Id. ¶ 53.  On November 8,
2018 Liberty Mutual told Favreau that she would be terminated on
December 12, 2018.  Id. ¶ 54.

Favreau's treating physicians have indicated that her
mental health symptoms were triggered by Liberty Mutual's
actions, including stopping her pay, taking money from her
Flexible Spending Account, and delaying action on her long-term
disability claim.  Id. ¶¶ 36, 41-44, 46, 47, 49, 51.

Favreau alleges that because Liberty Mutual refused to
grant time off under FMLA, she suffered substantial harm and
financial losses, to the point that she was constructively
discharged.  Id. ¶¶ 33, 55.

### B.  Procedural History

Favreau filed a complaint on November 23, 2018 against
Liberty Mutual in the Massachusetts Superior Court sitting in
and for the County of Middlesex, Massachusetts.  State Ct. R.,
Compl. Jury Demand 1, ECF No. 11.  The complaint alleged claims
under the FMLA, the Massachusetts Wage Act, breach of contract,
and negligent hiring, supervision and retention.  Id. 17-20.
Liberty Mutual timely removed the case to this Court on March
12, 2019.  Notice Removal 3, ECF No. 1.

Liberty Mutual moved to dismiss the complaint in its
entirety on April 2, 2019.  Def.'s Mot. Dismiss, ECF No. 8;
Def.'s Mem. Law Support Def.'s Mot. Dismiss, ECF No. 9.  At the

May 8, 2019 hearing this Court dismissed with prejudice the
Massachusetts Wage Act claim, the breach of contract claim, and
the negligent hiring, supervision and retention claim.
Electronic Clerk's notes, ECF No. 23. As to the FMLA claim,
this Court dismissed it without prejudice and gave Favreau 30
days to seek leave to file an amended complaint. Id.

Favreau filed a motion for leave to file the amended
complaint along with the amended complaint on July 8, 2019.
Pl.'s Mot.; Am. Compl. Liberty Mutual filed an opposition.
Def.'s Opp'n. This Court issued an order to show cause on
December 11, 2019, and the parties fully briefed it. Order Show
Cause, ECF No. 30; Pl.'s response; Def.'s response.

This Court advised the parties at the May 8 hearing that it
would rule on the papers, and now ALLOWS in part and DENIES in
part the motion for leave to file the Amended Complaint.

## II.  ANALYSIS

Favreau complains that Liberty Mutual violated the FMLA
provisions on four counts. First, she argues that Liberty
Mutual failed to inform her of her right to take protected leave
under FMLA, and never advised her that she was under FMLA leave
during her time off work, in violation of 29 U.S.C. §2617(a),
and 29 C.F.R. § 825.300 (Count I). Am. Compl. ¶¶ 67-71.
Second, she argues that Liberty Mutual denied her request for
entitled medical leave (Count II). Id. ¶ 76. Third, she

alleges that Liberty Mutual tolerated a hostile work environment created by her supervisor and retaliated against her for requesting protected medical leave by denying benefits (disability benefits, health insurance and use of the Flexible Spending Plan money) without cause (Count III). Id. ¶¶ 80, 82. Lastly, she argues that Liberty Mutual interfered with her FMLA rights by not notifying her of her rights, denying her medical leave and creating a hostile work environment that ended with her constructive discharge (Count IV). Id. ¶¶ 87-89.

Liberty Mutual contends that Favreau's claims are timed barred, and even if they are not timed barred, her factual allegations do not support a claim that would entitle her to relief. Def.'s Opp'n; Def.'s response.

## A.   Standard of review

This Court allowed Favreau to file an Amended Complaint so she could set forth the claim that Liberty Mutual improperly dealt with her FMLA rights and retaliated against her. See Tr. Mot. Dismiss May 8, 2019 ("Tr. Mot. Hr'g.") 6, ECF No. 31. Liberty Mutual requested this Court not to allow the motion to amend, since it still fails to state a claim that would warrant relief. Def.'s Opp'n 1-2.

### 1.   Motion to Amend

Federal Rules of Civil Procedure 15(a)(2) sets forth the rule for pleading amendments. Fed. R. Civ. Proc. 15(a)(2). A

court does not "mindlessly" need to grant every request for leave to amend.  Manning v. Boston Medical Center Corp., 725 F.3d 34, 60 (1st Cir. 2013) (quoting Aponte-Torres v. University of P.R., 445 F.3d 50, 58 (1st Cir.2006)).  "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend."  Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009)) (citing Boston & Me. Corp. v. Hampton, 987 F.2d 855, 868 (1st Cir.1993)).  When deciding whether to allow or deny the motion to amend for "futility," the district court applies the same standard as a motion to dismiss for failure to state a claim upon which relief may be granted.  Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996); Abraham, 553 F.3d at 117.

### 2.  Motion to Dismiss

Federal Rules of Civil Procedure 12(b)(6) sets forth the rule for motion to dismiss for failure to state a claim.  Fed. R. Civ. Proc. 12(b)(6).  In determining whether a complaint survives the motion to dismiss for failure to state a claim, the court "accept[s] well-pleaded allegations in plaintiff's complaint as true and draw all reasonable inferences in his favor."  Morales-Tañon v. Puerto Rico Elec. Power Authority, 524 F.3d 15, 17 (1st Cir. 2008) (citing Parker v. Hurley, 514 F.3d

87, 90 (1st Cir. 2008)); see also Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011) ("The sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted.")  Any allegations in the complaint must be "plausible."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 548 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  Id. (citations omitted) (emphasis added).  If the facts alleged are mere speculation, the motion to dismiss may be allowed.  See Rodríguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 283 (1st Cir. 2014) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

In order to sustain a Rule 12(b)(6) challenge, a complaint must contain facts that satisfy each required element under a cognizable legal theory of recovery.  See Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005).  A showing of each element of a prima facie case, however, is not required.  Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013).  "[T]he elements of a prima facie case are useful as a prism to shed light upon the plausibility of a [plaintiff's] claim."  Carrero-Ojeda v.

_Autoridad De Energía Eléctrica_, 755 F.3d 711, 719 (1st Cir. 2014) (_citing Rodríguez-Reyes_, 711 F.3d at 54).

### 3. FMLA Violations

The FMLA was enacted with the goal of helping working women and men to balance the demands of work and personal life. _Carrero-Ojeda_, 755 F.3d at 718. The FMLA establishes substantive rights, such as an employee's entitlement to twelve weeks of leave during any twelve-month period to take care of personal or family serious health conditions. _Id._ The FMLA also contains provisions to protect the exercise of the substantive rights, making it unlawful for employers to "(1) 'interfere with, restrain, or deny the exercise' of any FMLA right, 29 U.S.C. § 2615(a)(1); or (2) retaliate or 'discriminat[e] against employees . . . who have used FMLA leave,' such as by 'us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions[,] or disciplinary actions,'" _Id._ (_quoting_ 29 C.F.R. § 825.220(c); 29 U.S.C. § 2615(a)(2); _Colburn_ v. _Parker Hannifin_, 429 F.3d 325, 330-31 (1st Cir. 2005)).

Favreau, in her complaint, contends that Liberty Mutual interfered with her FMLA rights by not providing her with notice and denying here requests. She also states that Liberty Mutual retaliated against her for exercising her FMLA rights.

**B.    Statute of Limitations for FMLA Claims**

In general, a cause of action arising from an alleged violation of the FMLA must be brought within a two-year statute of limitation, which runs from "the last event constituting the alleged violation for which the action is brought."  29 U.S.C. § 2617(c)(1).  When there is an alleged willful violation, "the FMLA limitations period is increased from two years to three." Hillstrom v. Best W. TLC Hotel, 354 F.3d 27, 33 (1st Cir. 2003) (citing 29 U.S.C. § 2617(c)(2)).

**1.    Willful Violations**

A conduct is willful when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 (1985); see also Hillstrom, 354 F.3d at 33).  Negligent conduct is not enough to establish a claim for willful violations of the FMLA.  Id. ("it is generally understood [that the word 'willful]'. . . refer[s] to conduct that is not merely negligent.")

The plaintiff must demonstrate the following two components when alleging a willful violation of the FMLA: "(1) the defendant employer had actual knowledge of, or showed reckless disregard for, the requirements of the FMLA, and (2) intentionally disobeyed or ignored the law."  Lukacinsky v.

Panasonic Serv. Co., Civ. A. No. 03-40141-FDS, 2004 U.S. Dist.
LEXIS 25846, at *20-21 (D. Mass. Nov. 29, 2004) (Saylor, J.)
(citing Biggins v. Hazen Paper Co., 953 F.2d 1405, 1415 (1st
Cir. 1992); Maldonado v. Administration De Correccion, Civ. A.
No. 90-2186, 1993 U.S. Dist. LEXIS 9577, at *11 (D.P.R. Feb. 5,
1993)).

### a. Favreau Alleged Sufficient Facts to Make a Claim of Willful Violation.

The employer's actual knowledge requirement is fulfilled if
it previously granted leave under the FMLA.  See Lukacinsky,
2004 U.S. Dist. LEXIS 25846 at *22 (finding that employer "had
actual knowledge of the requirements of FMLA" because it
previously granted formal leave that tracked FMLA provisions).
Here, Favreau alleges that Liberty Mutual knew, as early as
2007, about her mental health conditions and even granted her
leave under FMLA.  Am. Compl. ¶¶ 6-8.

"The touchstone of a willful violation appears to be
evidence of discriminatory animus."  Lukacinsky, 2004 U.S. Dist.
LEXIS 25846, at *24.  That animus can be demonstrated by
evidence of "derogatory comments and overt hostility on the part
of [the employer]" towards the plaintiff's medical condition and
the need for medical leave.  Id.

Favreau states sufficient factual allegations of situations
that a jury could classify as "derogatory comments" or "overt

[14]

hostility" from her supervisors with regards to her health condition or her requests for medical leave. Am. Compl. ¶¶ 55-63. In January 2010, Favreau alleges that her supervisor issued "unsupported disciplinary actions in retaliation for her requests for [FMLA] leave." Id. ¶ 8. After her leave to attend the death of her niece in October, 2016, Favreau alleges that her supervisor made derogatory comments indicating that "he could not stand" her. Id. ¶ 18. On October 25, 2016 she alleges she was forced to fight for a stipend unlike her co-workers who received the benefit without additional steps, id. ¶ 19, and on November 28, 2016, Favreau "cried during an entire video conference call . . . because she could not control the manifestation of the symptoms of her illness" and her supervisor told her that she "should be getting back to normal by now." Id. ¶ 26. Favreau also indicated that her supervisor spied on her while she was working, id. ¶¶ 21, 27, and increased her workload disproportionately in comparison to her co-workers. Id. ¶¶ 20, 25.

Some of the Liberty Mutual actions could mitigate against a finding of willful violation of the FMLA. As Favreau recognized, Liberty Mutual approved FMLA leave in prior situations, Am. Compl. ¶ 7,[2] and granted her reasonable

---

[2] Favreau indicated that in December of 2009 she "requested another leave of absence under the FMLA," however, she did not

accommodations by allowing her "to extend her diary in order to
balance the increased volume that occurred due to the
understaffed department," id. ¶ 15.  See Lukacinsky, 2004 U.S.
Dist. LEXIS 25846, at *24-25 (noting that employer denied any
intentional disobeying or disregarding its obligations under
FMLA, and provided instances of good faith acts.)

When there is evidence of employer's good faith that could
undermine the plaintiff's evidence of willfulness, the issue
should be summitted to the jury.  Lukacinsky, 2004 U.S. Dist.
LEXIS 25846, at * 25 (considering "two grants of FMLA leave and
salary increase" as mitigating factors "against a finding of
willfulness); see also Colon v. Wyeth Pharm. Co., 363 F. Supp.
2d 24, 29 (D.P.R. 2005) ("the determination of their employer's
willfulness, or lack thereof, in order to apply the exception to
the two year statute of limitation is a question for the trier
of fact to decide.") (citing Melendez-Arroyo v. Cutler-Hammer de
P.R. Co., 273 F.3d 30 (1st Cir. 2001); Pabst v. Okla. Gas &

provide information as to whether Liberty Mutual approved it.
Am. Compl. ¶ 8.  From her Amended Complaint this Court can
reasonably infer that it was, indeed, approved, since Favreau
later complains on how her supervisor who "was aware of the
request . . . [retaliated] for her requests for leave." Id.  On
another occasion (October 9, 2016) Liberty Mutual granted
Favreau "leave to attend to her matters related to her niece's
services and attendance to related affairs, and to manage her
mental health issues." Id. ¶ 17 (emphasis added).  Although
Favreau alleges Liberty Mutual did not provide her a notice of
her rights under the FMLA, she was able to take time-off and
return to work on October 18, 2016.  Id. ¶ 19.

<u>Elec. Co.</u>, 228 F.3d 1128 (10th Cir. 2000)).

### 2. "Last Event" that Triggers the Statute of Limitation for Violation of the FMLA

To determine when the statute of limitations starts to run, the FMLA indicates that the action can be brought two years (negligent violation) or three years (willful violation) "after the date of the <u>last event</u> constituting the alleged violation for which the action is brought."  29 U.S.C.S. § 2617(c) (emphasis added).

This litigation began on November 23, 2018.  If the trier of facts determines that a three-year statute of limitation applies, because Favreau's employer's denials were willful, then she could pursue her claims for situations that occurred on or after November 23, 2015.  If these denials were merely negligent, her claims accrued only for discrete events occurring after November 23, 2016.

Favreau points to four instances where Liberty Mutual allegedly failed to give her notice under FMLA:

- October 9, 2016, when her niece passed away.  Am. Compl. ¶ 17.

- November 22, 2016, when she told her supervisor that she was struggling with mental health and his response was that "she had been out of the office too much."  <u>Id.</u> ¶ 24.

- November 28, 2016, when Favreau cried during an entire

video call with her supervisor, and he told her that she "should be getting back to normal by now."  Id. ¶ 26.

•    December 2, 2016, when her supervisor told her, in response to her claim that she needed medical leave, that "everyone suffers personal losses" and that Favreau "already received sufficient support from [Liberty Mutual]."  Id. ¶ 28.

Favreau also alleges that Liberty Mutual wrongly denied her requests for FMLA leave on November 22 and 28, and December 2, 2016.

If the trier of facts determines that a two-year statute of limitation applies, then the question turns to what constituted the "last event" of a violation of the FMLA.  What constitutes the "last event" has been analyzed, without harmonization, among different circuits.  See Fugate, 304 F. Supp. 3d at 506-08 (S.D. W. Va. 2018).

Some courts have considered that the "last event" occurred when the plaintiff's request for medical leave under FMLA is denied.  See Barrett v. Ill. Dep't of Corr., 803 F.3d 893, 894 (7th Cir. 2015) ("When an FMLA plaintiff alleges that his employer violated the Act by denying qualifying leave, the last event constituting the claim ordinarily will be the employer's rejection of the employee's request for leave"); Reed v. Lear Corp., 556 F.3d 674, 681-82 (8th Cir. 2009) ("An FMLA violation

occurs when an employer improperly denies a request for leave");
Marshall v. Donahoe, No. 12-cv-0431, 2013 U.S. Dist. LEXIS 21224
at *8 (D. Md. Feb. 15, 2013) (ruling that, when plaintiff
requested 3 FMLA leaves during July 2007, "the last event
constituting the alleged violation of the FMLA was July 21,
2007, when [plaintiff] was last denied leave"); see also Fugate
v. Frontier W. Va., Inc., 304 F. Supp. 3d 503, 506-507 (S.D. W.
Va. 2018) ("[T]he last event for the purpose of determining the
statute of limitations was the last denial of leave and not [the
plaintiff's] ultimate termination," because the termination was
"unassociated with his previous requests for FMLA leave.")

On the other hand, other courts have considered that the
"last event" occurs when the plaintiff is terminated -- on
adverse action serious enough to warrant resort to the legal
system.  See Butler v. Owens-Brockway Plastic Prods., Inc., 199
F.3d 314, 317 (6th Cir. 1999); Payton v. Federal Express, Corp.,
Civ. A. No. 1:06-CV-00333, 2006 U.S. Dist. LEXIS 68207 at *9
(M.D. Pa. Sep. 22, 2006) ("termination was the 'last event'");
Walsh v. At&T Corp., No. 1:05 CV 00769, 2007 U.S. Dist. LEXIS
50051 at *23 (N.D. Ohio July 11, 2007) ("[n]ormally, the 'last
adverse action' occurs on the date of the plaintiff's
termination."); Archery v. AT&T Mobility Servs. LLC, No. 17-91-
DLB-CJS, 2019 U.S. Dist. LEXIS 53637 at *33 (E.D. Ky. Mar. 29,
2019) ("the limitations period begins to run at the moment the

plaintiff is terminated, not when the employer first interferes with the plaintiff's FMLA rights."); <u>Davis</u> v. <u>Western Wayne Sch. Dist.</u>, No. 3:07cv1906, 2008 U.S. Dist. LEXIS 130742 at *7 (M.D. Pa. May 9, 2008) ("termination was the 'last event constituting the alleged violation for which the action is brought.'"); <u>Sparenberg</u> v. <u>Eagle Alliance</u>, No. 14-cv-1667, 2016 U.S. Dist. LEXIS 13447 at *4 n.2 (D. Md. Feb. 4, 2016) (applying <u>Butler</u> because its rationale was "more persuasive" and considering that "because the two [alleged violations of the FMLA] were linked, 'the last event constituting the alleged violation,' . . . fell within the FMLA's . . . statute of limitations period.")

The First Circuit has yet to decide which approach to follow, but two decisions from other sessions of this court appear to have followed the holding on <u>Butler</u>. In <u>Lukacinsky</u>, the court indicated that the "'last event' triggering the alleged violation was [plaintff's] . . . termination from employment," and considered the defendant's actions as willful because some statements (made by the plaintiff's supervisor within the three-year window) could demonstrate discriminatory animus against the plaintiff. 2004 U.S. Dist. LEXIS 25846 at *19.

In <u>Williams</u> v. <u>Massmutual Life Ins. Co.</u>, the court indicated that the FMLA claim was not timed-barred because, although the plaintiff's request for FMLA leave occurred "just

outside the three year limitations period," the FMLA violation "culminated" the date the plaintiff returned to work and was fired.  Civ. A. No. 05-30257-MAP, 2006 U.S. Dist. LEXIS 108029, at *11-12 (D. Mass. May 16, 2006) (Neiman, M.J.)  There, the Court used the termination date because it was the "last date mentioned" in the complaint.  Id.  This decision, however, does not develop a deep analysis of the statute of limitations for alleged FMLA violation claims.

### 3. Favreau's "Last Event" that Triggers the Statute of Limitations is a Question of Fact.

Favreau requests this Court follow Butler and consider, as the last event, the date of her employment termination (by constructive discharge), which is December 2, 2016.  Pl.'s Resp. 10.  In her brief, Favreau refers to other decisions that followed the Butler standard.  Id. at 3-9 (citing Payton, 2006 U.S. Dist. LEXIS 68207; Walsh, 2007 U.S. Dist. LEXIS 50051; Archery, 2019 U.S. Dist. LEXIS 53637; Davis, 2008 U.S. Dist. LEXIS 130742).  Favreau also distinguishes the decision in Barrett because, unlike Favreau, Barrett suffered prejudice in the form of discipline each time the defendant wrongfully denied FMLA leave.  Id. at 8.  Favreau contends that simple lack of notice or wrongful denials under FMLA, without an adverse employment action, are not enough to trigger the statute of

limitations.  Id. at 9.[3]

Liberty Mutual asks this Court to follow Barrett because
Favreau's allegation of FMLA violations are "discrete
violations," each triggering its own statute of limitations.
Def.'s Resp. 4 (citing Barrett, 803 F.3d at 899).  According to
Liberty Mutual, the court in Artis v. Palos Community Hosp.,
found that "the plaintiff's FMLA claims based on denial of leave
and failure to provide FMLA notice were time barred where they
were based on events beyond the statute of limitations," id.
(citing No. 02 C 8855, 2004 U.S. Dist. LEXIS 20150 at *27 n.3
(N.D. Ill. Sep. 22, 2004)), and similarly, the decision in
Archery recognized that "an FMLA claim may be timed-barred if,
for example, it is based upon the improper denial of leave that
occurred outside the statute of limitations," id. (citing 2019
U.S. Dist. LEXIS 53637).  Liberty Mutual additionally contends
that Butler did not negate that "FMLA claims based on events
occurring outside the statute of limitations are time-barred."
Id. (citing 199 F.3d at 317; Archery, 2019 U.S. Dist. LEXIS
53637).  Lastly, Liberty Mutual argues that even under the
Butler standard, Favreau's claim must fail because she cannot

_____

[3] Favreau also indicates that Congress intended for the
"last event" to be the communication or event that "ultimately
result in a meaningful event that prejudices the employee."
Pl.'s Resp. at 8.  That argument, however, is not supported by
any authority.

demonstrate a material adverse action (common in "all of the district court cases upon which [Favreau] relies") because her "constructive discharge" did not occur.  Id. at 5-6.

In Barret and Buttler the employees -- who indeed were able to take time off -- were terminated because their employers mistakenly classified protected FMLA leave as unprotected, and therefore, counted that time towards the absentee policy in the workplace.  Here, however, Favreau was not terminated because of an absence from work.[4]  Barret and Buttler are also distinguishable because the requested leave in those cases was discrete.  Barrett, 803 F.3d at 897; Butler, 199 F.3d at 317.

An employee can request protected leave under FMLA on multiple occasions, but the statute of limitations starts to run only when the employer takes a final ("last") determination denying that specific request for leave.  The denials of leave prior to the last denial, even if outside the 2-year or 3-years statute of limitations might not be time barred, if they are part of the same continuous request.  This interpretation was adopted by the court in Marshall, when analyzing continuous requests under FMLA, and this Court finds it persuasive, and adopts its reasoning.  See 2013 U.S. Dist. LEXIS 21224, at *3,

---

[4] The parties contest whether there was in fact a termination of the employment agreement on December 2, 2016. See Am. Compl. ¶71; Def.'s Opp'n 13.

*8. They would be barred, however, if they are discrete, independent request and denials, as in Barret.

In general, the "continuing violation" doctrine allows a plaintiff to pursue claims for acts that fall outside the limitation period, as long as the plaintiff demonstrates that they are not discrete acts of discrimination but "part of a pattern of discrimination anchored by acts that occurred within the limitations period." Andrews v. Massachusetts Bay Transit Authority, 872 F. Supp. 2d 108, 116 (D. Mass. 2012) (Tauro, J.) Courts have generally been unwilling to apply the "continuing violation" doctrine to FMLA claims, unlike Title VII claims. See Barrett, 803 F.3d at 899 (rejecting the "continuing violation" doctrine because plaintiff's claims were not "repeated conduct" but "three specific occasions."); see also Clark v. Philadelphia Hous. Authority, No. 14-5460, 2015 U.S. Dist. LEXIS 52606, at *4-6 (E.D. Pa. Apr. 21, 2015) (stating that FMLA claims are more likely to be discrete events, rather than a "continuing violation." The court stated, however, that, even if applying this doctrine, the FMLA claims would fail); Smith v. Westchester County, 769 F. Supp. 2d 448, 463 n.14 (S.D.N.Y. 2011) (rejecting the application of this doctrine because plaintiff did "not [point] to any case law applying the continuing violation doctrine to the FMLA," however, it contemplated that even if applying the doctrine, the FMLA claims

would fail.); <u>Andrews</u> v. <u>Massachusetts Bay Transit Authority</u>, 872 F. Supp. 2d 108, 117 (D. Mass. 2012) (Tauro, J.) (rejecting the application of this doctrine because "[p]laintiff cannot point to any anchoring [FMLA] event that occurred within the statute of limitations.")

Favreau made sufficient factual allegations to indicate December 2, 2016 as the date that triggered the statute of limitation, not because it was the "termination" date, but because it was the last alleged instance when Liberty Mutual denied her continuous request for leave.  Since it is disputed whether the statutes of limitations have run, the questions must be resolved by the trier of facts.  <u>See</u> <u>Melendez-Arroyo</u> v. <u>Cutler-Hammer de P.R. Co., Inc.</u>, 273 F.3d 30, 38 (1st Cir. 2001) ("Where questions of fact are presented, statute of limitations defenses are ordinarily submitted to the jury," but dismissing the case because the statute of limitations had indisputably run) (<u>citing</u> <u>Fowler</u> v. <u>Land Mgmt. Groupe, Inc.</u>, 978 F.2d 158, 162 (4th Cir. 1992)).  If the trier of fact where to determine that the leave requested on November 22, 2016 was the same underlying leave requested on December 2, 2016, then Favreau's allegations as to what happened on November 22, 2016 are not time barred.  At this stage, this Court can reasonably infer that the requests made on November 22 and 28, and December 2, 2016 were the same continuous request, as on all 3 occasions the

underlying reason was that Favreau needed to take care of her

mental health.[5]

### C. Failure by Liberty Mutual to Give Favreau Notice about her FMLA Rights (Claim I)

The FMLA implementing regulations require employers to

provide notice to their employees regarding their FMLA rights at

various times. Bellone v. Southwick-Tolland Regional Sch.

Dist., 915 F. Supp. 2d 187, 193 (D. Mass. 2013) (Neiman, M.J.)

(citing 29 C.F.R. § 825.300(b)-(d)). In particular, "an

employer must notify an employee of the employee's eligibility

to take FMLA leave ('eligibility notice'), absent extenuating

circumstances, within five business days of an employee's

request for FMLA leave or within five business days of when 'the

employer acquires knowledge that an employee's leave may be for

an FMLA-qualifying reason.'" Id. (quoting 29 C.F.R. §

825.300(b)). Furthermore, if the leave will be designated as an

FMLA leave, the employer must notify the employee "within five

business days of '[w]hen the employer has enough information to

determine whether the leave is being taken for a FMLA-qualifying

reason,' again, absent extenuating circumstances." Id. (quoting

29 C.F.R. § 825.300(d)). The failure to comply with the notice

---

[5] Unlike these cases, Favreau alleged sufficient facts to allow the inference that Liberty Mutual's actions were not discrete, but a continuous failure to notify Favreau of her rights under FMLA and denial of FMLA leave.

requirement give rise to an interference claim, but an employee can only recover "for technical violations of the notice [requirement]" if shows that "the lack of notice caused some prejudice." Id. (citing 29 C.F.R. § 825.300(e); Dube v. J.P. Morgan Investor Servs., 201 Fed. Appx. 786, 788 (1st Cir. 2006); Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89, 91, (2002)). If the employee received leave, but the employer failed to give notice, absent prejudice, a claim for failure to give notice under FMLA must fail. Id. (commenting that there would be prejudice if the "employee would not have structured leave in the same way had notice been provided").

An employee is not required to specifically invoke the FMLA when requesting leave. See Fernandes v. Wal-Mart Stores, Inc., Civ. A. No. 03-11933-RGS, 2007 U.S. Dist. LEXIS 14618, at *11 (D. Mass. Mar. 1, 2007). It is enough for the employee to explain to the employer "the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the [FMLA]" Id. (quoting 29 C.F.R. § 825.208(a)(1)).

Favreau contends that Liberty Mutual failed to provide her with notice of her rights under the FMLA on October 9, November 22, November 28, and December 2, 2016. Am. Compl. ¶ 72; Def.'s Opp'n 6. She alleges this failure caused her harm because: (i) she "believed she was not entitled to leave" which meant that on November 22 she "continue working when her health required the

time off," (ii) "[h]er mental illness symptoms therefore increased," and (iii) she "believe[d] that she had no choice but to leave work without permission," which resulted in her alleged constructive discharge.  Am. Compl. ¶ 72.

Liberty Mutual asserts that the October 9 and November 22, 2016 instances are time barred.  Def.'s Opp'n 6.  In the alternative, Liberty Mutual contends that Favreau "fail[ed] to establish that Liberty Mutual had notice that she required FMLA leave," id. at 8; that they did not have to give her notice as to the October 9, 2016 leave because it was a non-FMLA leave (granted to deal with Favreau's niece's funeral), id. at 9; and that, as to the November 22, 2016 leave, Favreau did not allege that she suffered any harm.  Id.  Liberty Mutual further indicates that for the leave requested on November 28, 2016 they did gave her timely notice on December 2, 2016,[6] and indeed, as of December 2, 2016 "she remained on a leave of absence for some two (2) years thereafter."  Id. at 9.

First, Favreau has alleged sufficient facts to make it plausible that her claims for the denials of October 9 and

---

[6] Liberty Mutual indicates that Favreau conceded, on paragraph 39 of the Amended Complaint, that "Liberty Mutual provided her with notification of her rights under the FMLA on December 2, 2016."  Def.'s Opp 7.  Paragraph 39 of the Amended Complaint, however, is not a concession, but rather, a statement that she had no contemporaneous knowledge of the letter dated December 2, 2016.

November 22 are not time barred.  See Supra II.B.1-3.  Second,

Favreau sufficiently asserts that she communicated to her

supervisors at Liberty Mutual her need for time off to take care

of her mental health condition.  On several occasions between

October and December 2016 Favreau reported to her supervisor

that "she was struggling with her mental health issues . . .

[and] she was experiencing severe depression."  Am. Compl. ¶ 23;

see also Id. ¶¶ 24, 26, 28.  It is plausible that such

allegations were enough to put Liberty Mutual on notice that

Favreau required time off to treat her health condition, as

indeed she had done in previous years.  See Id. ¶ 6.

### 1.  October 9, 2016

Favreau stated that the purpose of the October 9, 2016

leave was to attend her niece's funeral and "to manage her

mental health issues."  Id. ¶ 17.  Favreau concedes that she was

able to take time off until October 18, 2016.  Id. ¶ 19.  Even

if that leave was protected FMLA leave,[7] and even if Liberty

Mutual did not provide her notice of her rights she does not

have a claim against Liberty Mutual because the technical

failure is not coupled with allegations that Favreau suffered

any harm or prejudice.  Claim I related to the events on October

2016 is DISMISSED.

---

[7] The parties dispute whether this leave was, in fact, FMLA
leave.  See Infra II.E.

### 2. **November 22 and 28, 2016**

On November 22, 2016 once Favreau's supervisor denied her leave during the holiday season, she informed him that she still needed time off because "her mental illness symptoms were increasing and significantly impacting her overall health." Id. ¶ 24. It is true that Favreau did not mention her need to take FMLA leave, but that level of specificity is not what the law requires. See 29 C.F.R. § 825.208(a)(1); See also Waites v. Kirkbride Ctr., No. 10-cv-1487, 2011 U.S. Dist. LEXIS 55363 at *29 (E.D. Pa. 2011) (stating plaintiff did not need to "allege that she expressly requested FMLA leave"); Miller v. GB Sales & Servs, Inc., 275 F. Supp. 2d 823, 829 (E.D. Mich. 2003) (holding that where employer had knowledge of employee's serious health conditions, burden is placed on the employer to inquire whether those reasons offered by employee were FMLA-qualifying reasons). Cf. Upchurch v. Mount Carmel Health Sys., 893 F. Supp. 2d 899, 906 (S.D. Ohio 2012) (finding that employee's statements "I can't do this today. It's all too much. I didn't sleep last night; It's more than I can do," could be reasonably inferred as a request for medical leave, but dismissing the claim because it was insufficient to show employer's reckless disregard in discharging him because of that request). Favreau's reason to request the leave was clear, and even then, her supervisor

indicated that "she had been out of the office too much" as a reason to deny the request. Id. ¶ 24.

Regarding the events of November 28, 2016, Favreau did not verbally articulate her need to take leave, but this Court can reasonably infer that her supervisor had enough background information so that he should have either inquired further as to whether Favreau was requesting FMLA leave or notified her that leave under FMLA was available. See § 825.208(a)(1).

Furthermore, Favreau does indicate that on both occasions her mental illness symptoms increased because of the lack of notice of her right to take protected leave under the FMLA, showing harm or prejudice. Id. ¶ 71. She even explained that she suffered that harm because she had to continue working, instead of being able to take time off and "to return to good health . . . ." Id. "[F]ailure to advise an employee of his/her right to take intermittent leave 'may constitute interference with an employee's FMLA rights if it causes the employee to forfeit FMLA protections.'" DeFilippo v. CBS Corp., No. 12-11109-JGD, 2013 U.S. Dist. LEXIS 125345, at *9-10 (D. Mass. Sep. 3, 2013) (Dein, M.J.) (quoting Crevier v. Town of Spencer, 600 F. Supp. 2d 242, 257 (D. Mass. 2008) (Saylor, J.)); see also Ragsdale, 535 U.S. at 89-90 (an employer violates section 2615 by interfering with, restraining, or denying the exercise of FMLA rights.")

Liberty Mutual indicates that on December 2, 2016 it approved Favreau's requested leave for November 28, 2016, which is within the five business day term provided by the regulations. Def.'s Opp'n 9. It also provides two supporting documents indicating that, on December 2, 2016 that date, Favreau informed Liberty Mutual that she needed medical leave beginning on December 5, 2016 to take care of her serious health conditions. See Def.'s Opp'n, Ex. A, Notice of Eligibility and Rights & Responsibilities (Medical Leave) 6, ECF No. 29-1; Def.'s Opp'n, Ex. A, Designation Notice (Family and Medical Leave Act) 10, ECF No. 29-1. It is contradictory, therefore, that the November 28, 2016 request was approved on December 2, 2016, but the approval documents refer to December 2, 2016 as the day the leave was requested.[8] This Court reject's Liberty Mutual arguments that these documents render Favreau's claims implausible, and finds that she did state enough factual allegations to indicate: (i) she informed Liberty Mutual of her need to request leave, (ii) Liberty Mutual did not timely notify her that her November 28, 2016 leave was approved or denied, and (iii) she suffered prejudice for the lack of notice. Claim I as it relates to the events on November 22 and 28, 2016 may stand.

---

[8] "In evaluating a motion to dismiss, the Court may consider documents pertinent to the action or referenced in the complaint." In re Raytheon Sec. Litig., 157 F. Supp. 2d 131, 146 (D. Mass. 2001) (Saris, J.).

### 3.  December 2, 2016

On December 2, 2016 Favreau expressed to her supervisor that "she was struggling with the symptoms of her serious health condition and work," but he did not notify her of any rights under the FMLA.  Am. Compl. ¶ 28.  As to this incident, this Court rules there are sufficient allegations to support a finding that Favreau did expressly inform Liberty Mutual of her need to request leave, Liberty Mutual did not notify her that she had the right to take time off under FMLA, and her supervisor denied this request because "everyone suffers personal losses," and "Favreau had already received sufficient support from her employer."  Id.  On December 2, 2016 Favreau also made a request for leave to human resources, thus providing Liberty Mutual formal notice that Favreau was requesting leave that would qualify under the FMLA.  Id.

This Court, however, rules that Favreau's claim for lack of notice on the events of December 2, 2016 must fail.  Even looking at the facts in the light most favorable to Favreau, she did not state that she suffered any prejudice.  This Court can infer that Favreau's request was approved, and this approval was communicated to her through the letter of December 2, 2016.[9]

---

[9] It is presumed that a mailed document has been received if it was properly and timely mailed.  See United States ex rel. Westmoreland v. Amgen, Inc., 812 F. Supp. 2d 39, 78 (D. Mass. 2011)  For this presumption to operate in the context of regular

Even if Favreau did not receive the December 2, 2016
communication, she has not stated any prejudice, since she was
able to take time off.  See Dube, 201 Fed. Appx. at 788
("[W]here an employee had received all of the FMLA leave to
which that employee was entitled, the employee ha[s] no remedy
for the employer's technical violation of the notice
requirements" unless "the employee can show that the lack of
notice caused some prejudice." (citing Ragsdale, 535 U.S. at 90-
91).  Favreau alleges that the lack of notice that her FMLA
leave was approved prejudiced her because it caused her
distress, as she believed that "she did not have permission to
take leave."  Id. ¶¶ 71- 72.  Her complaint indicates, however,
that Favreau was able to enjoy time off for even more than the
12 weeks allotted by the FMLA.[10]  See Am. Compl. ¶ 54; See also

---

mail, the record must establish "that the notice was accurately
addressed and mailed in accordance with normal office
procedures."  Id. (citing Hoefs v. CACV of Colorado, LLC, 365 F.
Supp. 2d 69, 72-73 (D. Mass. 2005) (adopting the Report and
Recommendation of Neiman, M.J.); Lopes v. Gonzalez, 468 F.3d 81,
85 (2d Cir. 2006)).  Favreau indicates that she "had not seen
this letter prior to April 19, 2017," Am. Compl. ¶ 39; that she
"was not aware of any letter concerning an FMLA designation
until . . .  she inquired in April of 2017," Pl.'s response 10;
and, that she "has not found that the letter was sent to her in
December of 2016." id.  She does not, however, deny or even
suggest that the letter was addressed to the incorrect address,
or sent on a different date than the one that appears in the
letter ("12/02/2016").

[10] This Court rules that Favreau's employment did not end on
December 2, 2016 and that she continued receiving employment
benefits until, at least, August 2017.  See Infra II.E.3.

Szabo v. Trustees of Boston Univ., Civ. A. No. 96-10806-GAO, 1998 U.S. Dist. LEXIS 4104, at *16-18 (D. Mass. Mar. 18, 1998) (O'Toole, J.) (no harm as the plaintiff "did take two weeks off from work . . . even though it may not have been designated official FMLA leave.")  Furthermore, it is not enough, for a showing of prejudice, to allege fear of not being able to leave or come back to work.  See Id. (holding that even if the plaintiff "can show that she suffered some emotional distress and worry at the uncertainty of not knowing what her job status would be," that "[l]oss of a sense of job security or the accompanying mental distress" is not an injury covered under the FMLA) (citing McAnnally v. Wyn South Molded Prods., 912 F. Supp. 512, 513 (N.D. Ala. 1996) (indicating that the statutory provisions do not demonstrate an intention to allow damages for mental distress))).  Liberty Mutual also suggests that Favreau could not have structured her leave differently because even after the 12 weeks of FMLA leave, she would not have been able to return to work.  Def.'s Opp'n 9; see also Bellone, 748 F.3d at 424.

Favreau does not indicate, either, that she has been medically cleared to return to work since December 2016. Instead, she has provided no return date, and her treating nurse

_____

Therefore, Favreau enjoyed well over 12-weeks of unpaid leave between December 2, 2016 and August 2017.

declared her unable to return to work on March 22, May 3 and July 11 of 2017. Am. Compl. ¶¶ 34, 44, 46. Without giving a return date, Favreau cannot show that if she had been notified that she could have managed her leave time differently so as not to exhaust her twelve weeks of leave under the FMLA.

This Court rules therefore that, although Favreau sufficiently alleged that on December 2, 2016 she informed Liberty Mutual of her need to request leave, even if Liberty Mutual did not timely notify her, she has not sufficiently alleged that she suffered any prejudice from the lack of notice. Claim I as it relates to the events on December 2, 2016 is therefore DISMISSED.

### D. Liberty Mutual's Denial of Requested FMLA Leave (Claim II)

The FMLA prohibits employers from, among other things, denying the substantive rights protected by FMLA. <u>Colburn</u>, 429 F.3d at 331; 29 U.S.C. § 2615(a)(1). To prevail in a FMLA interference claim based on denial of requested leave, a plaintiff is required to plausibly allege that his or her employer denied the FMLA benefits to which he or she was entitled. <u>Carrero-Ojeda</u>, 755 F.3d at 722.

A prima facie showing of interference requires the employee to show "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to

leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." Id. at 722 n.8. (citing Donald v. Sybra, Inc., 667 F.3d 757, 761 (6th Cir. 2012) (reh'g and reh'g en banc denied); Goelzer v. Sheboygan Cty., Wis., 604 F.3d 987, 993 (7th Cir. 2010)). Intent, however, is not an element of a claim for wrongful denial of protected FMLA leave. Colburn, 429 F.3d at 331 ("To meet his or her burden in an interference with substantive rights claim, a plaintiff need only show, by a preponderance of the evidence, entitlement to the disputed leave; no showing as to employer intent is required." (citing Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960-61 (10th Cir. 2002); King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999))).

Favreau alleges that Liberty Mutual denied her requested FMLA leave on November 22 and 28, and December 2, 2016. Liberty Mutual indicates that Favreau was required to state "explicitly" that she required FMLA leave. Def.'s Opp'n 11. In the alternative, they indicate that Favreau's allegation that "she was denied leave after her request on December 2, 2016, is contradicted by her affirmation that she received this very leave," id., because she "commenced a leave of absence for her medical condition in early December 2016, and remained out of work for almost two years." Id. at 12 (emphasis in original).

Regarding the first three elements, Favreau was eligible
for the FMLA's protections, Liberty Mutual is an employer
covered by the FMLA, and Favreau was entitled to leave under the
FMLA.  Am. Compl. ¶¶ 2, 4, 5, 65, 66, 75.  Liberty Mutual,
however, disputes that Favreau did not give them notice of her
intention to take leave.  Def.'s Opp. 8.  Liberty Mutual also
asserts that they did not deny Favreau any benefits because she
was able to take time-off as a consequence of her requests on
November 28, and December 2, 2016.  Def.'s Opp'n 11.

On balance, Favreau stated enough factual allegations for
this Court to conclude that on November 22 and 28, and December
2, 2016, she put Liberty Mutual on notice of her request for
time off to take care of her mental health.  See Supra II.C.

### 1.  November 22, 2016

On November 22, 2016, Favreau alleges she asked her
supervisor, twice, for leave.  Am. Compl. ¶ 24.  The first time
she asked for leave, which was immediately denied, was in
response to her supervisor's request to inform him about holiday
time off.  Id.  After this denial, however, Favreau indicates
that she expressly informed her supervisor that the time-off was
necessary for her to attend to her mental health conditions.
Id.  Her supervisor denied such request because of her previous
times out of the office.  Id.  When a mental health illness is
"a serious health condition that makes the employee unable to

perform the functions of the position," the employee is entitled

to protected FMLA leave.  See 29 U.S.C.S. § 2612(a)(1)(D).

These factual allegations are enough plausibly to establish that

Liberty Mutual denied the FMLA benefits to which Favreau was

entitled to.  Therefore, this Court allows Claim II as it

relates to the facts developed on November 22, 2016 to stand.

### 2.    November 28, 2016

On November 28, 2016 Favreau alleges that Liberty Mutual

denied her requested leave because her supervisor referred that

she "should be getting back to normal by now."  Am. Compl. ¶¶

26, 76.  As mentioned before, this Court does not credit Liberty

Mutual's attempt to argue that the request was approved on

December 2, 2016.  See Supra II.C.  Favreau's supervisor's

statement, coupled with Favreau's inability actually to take

time off from work, id. ¶¶ 27-28, are enough plausibly to

establish that Liberty Mutual denied the FMLA benefits to which

Favreau was entitled.  Claim II as to the November 28, 2016

events may thus stand.

### 3.    December 2, 2016

On December 2, 2016 Favreau alleges that Liberty Mutual

denied, twice, her FMLA leave request.  Id. ¶ 28.  The first

denial came from her supervisor, and the second alleged denial

from Human Resources when she "felt she had no choice but to

leave work. . ." Id.  Favreau's ability to take time off,[11] id.

¶ 29 ("[Favreau] has not reported to work since early December,

2016"), her concessions that she was not ready to go back to

work twelve weeks after December, 2016, and the presumption that

she had notice of the letter approving her request on December

2, 2016, makes Favreau's claim of wrongful denial implausible.

See Supra II.C.  This Court DISMISSES Claim II as to the

December 2, 2016 requested leave.

### E. Liberty's Mutual Retaliation against Favreau for Requesting Protected Leave under FMLA (Claim III)

The FMLA makes it unlawful for employers to retaliate

against employees for exercising their statutory rights.  29

U.S.C. § 2615(a); see Henry v. United Bank, 686 F.3d 50, 55 (1st

Cir. 2012).  An FMLA claim for retaliation stands or falls with

the employer's motive.  See Chase v. United States Postal

Service, 843 F.3d 553, 558-59 (1st Cir. 2016) ("Liability for

retaliation under the FMLA is restricted to actions taken out of

animus towards FMLA-protected leave." (citing 29 C.F.R. §

825.220(c))).  The key issue is whether an employer took the

adverse action for the unlawful purpose of retaliating against

the employee for exercising their FMLA rights or for a

---

[11] Favreau concedes that Liberty Mutual only cancelled her
health insurance on August 2017.  Am. Compl. ¶ 48.  It is
reasonable to infer that she enjoyed well over 12-weeks of
unpaid leave between December 2, 2016 and, at least, August
2017.

legitimate nondiscriminatory reason.  _Gourdeau_ v. _City of Newton_, 238 F. Supp. 3d 179, 184 (D. Mass. 2017) (quoting _Hodgens_ v. _General Dynamics Corp._, 144 F.3d 151, 160 (1st Cir. 1998)).

An employee makes a prima facie case of FMLA retaliation by showing that "(1) she availed herself of a protected FMLA right; (2) she was 'adversely affected by an employment decision;' and (3) 'there was a causal connection between [her] protected conduct and the adverse employment action.'"[12]  _Carrero-Ojeda_, 755 F.3d at 719 (quoting _Orta-Castro_ v. _Merck, Sharp & Dohme Quimica P.R., Inc._, 447 F.3d 105, 107 (1st Cir. 2006)).

Favreau alleges that Liberty Mutual retaliated against her because she attempted to take protected leave under FMLA.  Am. Compl. ¶ 80.  Specifically, she observes that once she started asking for leave on October 2016, Liberty Mutual took adverse actions against her, including giving a drastic increase in her workload, making her fight for a stipend given to other

---

[12] The Supreme Court in _Swierkiewicz_ v. _Sorema N. A._ indicated that the prima facie requirements under _McDonnell Douglas_ v. _Green_ do not "apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."  534 U.S. 506, 511 (2002) (citing 411 U.S. 792, 797 (1973).  _Swierkiewicz_ was decided before _Twombly_ and _Iqbal_ changed the pleading requirements.  _See Iqbal_, 556 U.S. 662 (2009), _Twombly_, 550 U.S. 544.  The First Circuit has held, however, that _Swierkiewicz_ remains good law.  _Rodríguez-Reyes_, 711 F.3d at 54 ("It is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage.")

employees, and assigning her menial work, as well as her
supervisor spying on her.  Id.  Favreau indicates that she was
constructively discharged because "[a]fter enduring several acts
of retaliation . . . she could not tolerate working un such
environment . . . so she determined that she had to leave work,
despite her lack authority to take leave."  Id. ¶ 81.
Additionally, Favreau alleges that, even after December 2, 2016
she continue experiencing retaliatory acts from Liberty Mutual,
such as the denial of her benefits "without cause or
explanation" for her disability, health insurance and Flexible
Spending plans.  Id. ¶ 82.

### 1.  October 9, 2016

Regarding the October 9, 2016 leave, Liberty Mutual
contends that Favreau did not avail herself of a protected FMLA
right.  Liberty Mutual indicates that any alleged retaliatory
act suffered after the October 2016 leave cannot be a basis of
FMLA retaliation, because the October 9, 2016 leave was a non-
FMLA leave.  Def.'s Opp'n 13.  At this stage of the proceedings,
the Court takes the allegations in the complaint as true, and it
is plausible to consider Favreau's request as protected FMLA
leave, as she alleges that she expressly indicated to her
supervisor that she needed that time off to, among other things,
"manage her mental health issues."  Am. Compl. ¶ 17.

Favreau's statements that her supervisor would "spy" on her, the initial denial of her stipend,[13] which was granted to others similarly situated, id. ¶ 19, and the disproportionate increase in her workload, id. ¶ 20, are plausibly considered adverse employment action. See Gómez-Pérez v. Potter, 452 F. App'x 3 at *8 (1st Cir. 2011) (indicating as example of adverse employment action disadvantageous assignments and toleration of harassment by other employees); Smith v. Westchester Cty., 769 F. Supp. 2d 448, 470-71 (S.D.N.Y. 2011)(holding that adverse action could be a decrease in salary, material loss of benefits, significantly diminished material responsibilities, and general actions that could "dissuade a reasonable worker from making or supporting a charge of discrimination.").[14] Cf. Gómez-Pérez, 452

---

[13] 29 U.S.C. § 2614(a)(2) indicates that "The taking of [FMLA] leave . . . shall not result in the loss of any employment benefit accrued prior to" leave.

[14] Several circuits have adopted this standard for materially adverse action to the FMLA context and this Court joins their interpretation that "[f]or purposes of the FMLA's anti-retaliation provision, a materially adverse action is any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights." Millea v. Metro-N. R. Co., 658 F.3d 154, 164 (2d Cir. 2011) (citing Breneisen v. Motorola, Inc., 512 F.3d 972, 979 (7th Cir.2008); Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 n. 2 (10th Cir.2006); McArdle v. Dell Prods., L.P., 293 Fed.Appx. 331, 337 (5th Cir.2008); DiCampli v. Korman Cmtys., 257 Fed.Appx. 497, 500-01 (3d Cir.2007); Csicsmann v. Sallada, 211 Fed. Appx. 163, 167-68 (4th Cir.2006)).

F. App'x 3 at *8 (Extreme supervision, snubbing and increased criticism will not satisfy the adverse employment action prong).

The "retaliatory motive in an employment discrimination case" is a question of fact.  Hazel v. U.S. Postmaster Gen., 7 F.3d 1, 4 (1st Cir. 1993).  Whether Liberty Mutual's decision to initially deny Favreau's stipend and disproportionally increase her workload were made with the intention to retaliate cannot be decided at this juncture.  See Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 96 (1st Cir. 2018) ("there is at least a question of fact as to whether such harassment [of being continuously threatened with termination] was severe or pervasive enough to constitute a retaliatory hostile work environment"); see also Andrews, 872 F. Supp. 2d at 115 (allowing retaliatory claim as plausible, and stating that the question of whether an event constitutes an adverse employment action is not ripe for decision at the motion to dismiss stage).

Favreau claims that she was subject to the alleged adverse actions while taking time off and as soon as she came back from her leave are plausible.  Am. Compl. ¶¶ 18-21.  There exists time proximity between the alleged adverse actions and Favreau's requested leave.  See Germanowski v. Harris, 854 F.3d 68, 74 (1st Cir. 2017) (although not always enough, "close temporal proximity between protected activity and an adverse employment action can satisfy a plaintiff's burden of showing causal

connection"). Favreau also stated that her supervisor who denied

her leave request of October 9, 2016 was the very same person

that deployed the alleged adverse actions. Am. Compl. ¶¶ 17-21;

Hodgens, 144 F.3d at 165 (holding that plaintiff sufficiently

showed causal connection between his FMLA-leave and the adverse

employment action because supervisor's comments regarding taking

time-off shortly after plaintiff took leave.) See also Waterman

v. White Interior Solutions, No. 2:19-cv-00032-JDL, 2019 U.S.

Dist. LEXIS 191506, at *13-14 (D. Me. Nov. 5, 2019) ("relevant

factors at the motion-to-dismiss stage include whether the

employee's coworkers or superiors made 'negative comments,

complaints, or expressions of reluctance . . . about [the

employee's] FMLA leave-taking'" (internal citations omitted));

Cf. Carrero-Ojeda, 755 F.3d at 721 (dismissing complaint that

was devoid of facts, such as "negative comments, complaints, or

expressions of reluctance by her superiors or co-workers about

her FMLA leave-taking" that would have made her retaliation

claim plausible). This Court thus permits claim III as to the

events resulting from the leave requested on October 9, 2016 to

go forward.

### 2. November 22, 2016

Liberty Mutual alleges that the claim of intolerable work

conditions after the denial of the November 22, 2016 leave

request is "dubious" because Favreau only worked with her

supervisor for "a total of 8 days. . ."  Def.'s Opp'n 13.

Particularly, Favreau indicates that after the request, her

supervisor increased her workload from 30-40 cases to 150-200

case and assigned to her menial cases that provided little

opportunity for advancement.  Am. Compl. ¶ 25.

Favreau requested FMLA leave, thus availing herself of her

protected FMLA rights, and she made enough factual allegations

to indicate that she suffered adverse employment actions.

Similar to the previous analysis, it is plausible for Favreau to

show that the disproportionate increase in her workload and the

reduction on her substantial responsibilities that would affect

her opportunities for advancement plausibly constitute adverse

actions.  See Evans v. Books-A-Million, 762 F.3d 1288, 1297

(11th Cir. 2014) (considering an [e]mployee's reassignment to an

inferior position with fewer responsibilities and opportunities

for advancement as "adverse employment action").  It is

plausible, as well, that there is a causal connection between

the alleged adverse employment actions and the requested leave,

because there is temporal proximity, see Germanowski, 854 F.3d

at 74, and assertions that Favreau's supervisor made negative

comments related to her taking time off, see Hodgens, 144 F.3d

at 165.  Am. Compl. ¶¶ 24-27.  This Court, therefore, permits

claim III as to the events resulting from the leave requested on

November 22, 2016 to go forward.

### 3. December 2, 2016

Liberty Mutual contends that the constructive discharge allegation must fail because Favreau "never resigned from her position – something required to establish a cognizable claim of constructive discharge." Def.'s Opp'n 13.

A constructive discharge claim based on a hostile work environment requires "that a reasonable person would have felt compelled to resign." Pennsylvania State Police v. Suders, 542 U.S. 129, 131, (2004). The Supreme Court considers the employee's resignation as a necessary benchmark to establish a claim of constructive discharge. Id.; see also Sensing v. Outback Steakhouse of Florida, LLC, 575 F.3d 145, 160 n.18 (1st Cir. 2009); Hurtt v. Int. Services, Inc., 627 Fed. Appx 414, 419-20 (6th Cir. 2015) (requiring that "the employee actually quit" to establish a constructive discharge as adverse employment action).

Favreau has not alleged that she resigned from her position. Liberty Mutual, on the other hand, explains (and Favreau confirmed), that Favreau's employment was terminated on December 2018, two years after she left work. Am. Compl. ¶ 54; Def.'s Opp'n 12. Favreau indication that her employment terminated on December 2, 2016 contradicts the fact that she still held Liberty Mutual liable for employment benefits after

that date.[15]  This Court finds, therefore, that Favreau's Amended

Complaint does not state a claim that she was constructively

discharged on December 2, 2016, as she continued receiving

employment benefits until, at least, August 2017.

Although Favreau did availed herself of a protected FMLA

right (requested FMLA leave), her Amended Complaint does not

state a plausible claim of constructive discharge, since she

failed to resign.  The termination on December 2018 (two years

after Favreau stopped going to work) was not, either, an adverse

employment action.  See Henry, 686 F.3d at 55 (holding that an

employer may not take FMLA leave into account as a negative

factor in deciding to terminate an employee, but it may dismiss

an employee for independent reasons). Cf. Kleya v. Karl Storz

Endovision, Inc., 385 F. Supp. 3d 99, 108 (D. Mass. 2019)

(Hillman, J.) ("'Very close' temporal proximity between

protected activity and an adverse action can satisfy a

plaintiff's burden of showing causal connection." (quoting

Sánchez-Rodríguez v. AT & T Mobility P.R., Inc., 673 F.3d 1, 15

(1st Cir. 2012)).

This Court DISMISSES Claim III as to the facts resulting

from the leave requested on December 2, 2106.

---

[15] Favreau acknowledges that Liberty Mutual paid some of her
employment benefits after December 2, 2016 such as health
insurance, which was cancelled on August, 2017, almost 9 months
after she stopped going to work.  Am. Compl. ¶ 48.

### 4. **Post-December 2, 2016**

Regarding the alleged denial of benefits after December 2, 2016, Liberty Mutual first alleges that it would not be logical to "adversely affect the terms and conditions of [Favreau's] employment," when according to her, she "effectively" resigned on December 2, 2016.  Def.'s Opp'n 14.  Second, Liberty Mutual asserts that Favreau did not allege, nor can she establish, "a causal connection between her alleged protected activity . . . and any adverse action she suffered" because none of the individuals in charge of administering the benefits post-December 2, 2016 (disability, health insurance and Flexible Spending Plans) were aware of Favreau's attempt to take FMLA leave, and those events "are too attenuated" (almost 2 years after Favreau's exhaustion of her FMLA rights).  Id.

A court should deny a claim of retaliation when the plaintiff fails to show that "the decisionmaker knew that the plaintiff was engaging in protected activity."  Chase, 843 F.3d AT 560-61.  Favreau's Amended Complaint does not plausibly state a connection between the decision from the administrative office in charge of managing the benefits and her request for FMLA leave in December 2016.  Favreau's contentions that she "believes" the actions were in "retaliation," Am. Compl. ¶ 30, 35, 46, 53, are not enough plausibly to state a causality connection.  See Ameen v. Amphenol Printed Circuits, Inc., 777

[49]

F.3d 63, 70 (1st Cir. 2015) (when the decision-maker in the alleged adverse action does not know of the protected activity the retaliation claim must fail).

While Favreau availed herself of protected FMLA activity and she alleges she suffered adverse employment actions, her amended complaint fails plausibly to allege a causal connection between the requesting of FMLA leave and Liberty Mutual's actions. Therefore, Claim III as to the facts developed after December 2, 2016 is DISMISSED.

### F. Interference (Claim IV)

Favreau indicates that her supervisor at Liberty Mutual interfered with her FMLA rights when he denied her requested leave. Am. Compl. ¶ 86. She also states that the creation of a hostile work environment deterred her from seeking future FMLA leave requests. Id. ¶ 88. Additionally, she contends that the lack of notice "mislead her into believing that she was not entitled to leave." Id. ¶ 89. Lastly, she alleges that this interference with her FMLA rights resulted in her constructive discharge. Id.

Liberty Mutual contends that "[c]ount IV of the proposed Amended Complaint is simply redundant to the prior [c]ounts," because it is based on the alleged failure to provide notice, denial and constructive discharge. Def.'s Opp'n 15.

In this count, Favreau is alleging that Liberty Mutual

retaliated against her by interfering with her FMLA rights, and is asking this Court to conduct such analysis under the interference framework.  Am. Compl. ¶¶ 84-92.  If an employer commits retaliatory acts of interference, however, the analysis must be conducted under the retaliation framework.  Chacon v. Brigham & Women's Hosp., 99 F. Supp. 3d 207, 214 (D. Mass. 2015) (Saylor, J.)  Similarly, if an employer commits "non-retaliatory interference," the analysis must be conducted under the interference framework.  Id.

Favreau's formulation of the claims is therefore redundant; the lack of notice (claim I) and denial (claim II) have already been analyzed under the interference framework, whereas the adverse employment actions (claim III) have been analyzed under the retaliation framework.  Therefore, claim IV is DISMISSED.

**III. CONCLUSION**

Because the Amended Complaint plausibly alleges facts to indicate Favreau could win as to some counts at trial, the motion to file the Amended Complaint is partially ALLOWED and partially DENIED, for the foregoing reasons.

**SO ORDERED.**

/s/ William G. Young
_____
WILLIAM G. YOUNG
DISTRICT JUDGE